ALEXANDER SUMMER, JR., PLAINTIFF-RESPONDENT,
v. TOWNSHIP OF TEANECK, DEFENDANT-APPELLANT.

Argued December 2, 1968—Decided April 2, 1969.

*Mr. Jacob Schneider* argued the cause for appellant (*Mr. Malcolm Blum,* on the brief).

*Mr. Arthur M. Greenbaum* argued the cause for respondent (*Mr. Joel A. Brotman,* on the brief; *Messrs. Greenbaum, Greenbaum and Rowe,* attorneys).

*Mr. E. Robert Levy,* Deputy Attorney General, argued the cause for *Mr. Arthur J. Sills,* Attorney General of New Jersey, *amicus curiae.*

*Mr. Vincent E. Fiordalisi* submitted a brief on behalf of New Jersey Committee against Discrimination in Housing, *amicus curiae.*

The opinion of the court was delivered by

WEINTRAUB, C. J. This case, brought by a real estate broker, involves the validity of an ordinance of the Township of Teaneck dealing with "blockbusting." On motion for summary judgment the trial court held the ordinance was beyond the legislative power of the municipality. We certified the Township's appeal before argument in the Appellate Division.

 Blockbusting is the practice of inducing owners of property to sell because of the actual or rumored advent into the neighborhood of a member of a racial, religious or ethnic group. The inducement is the supposed loss in property value for those who remain. The evils are evident. Sellers are exploited, and hostility is excited both in those who are persuaded their economic interests are thus threatened and in the group of citizens who are given to understand their presence is a blight. The present setting of racial discord magnifies the insult to the public well-being. No one suggests the subject is beyond the power of the State. The sole question is whether a municipality too may deal with it.

Reciting that blockbusting had already been experienced in the municipality and that "such practices are detrimental to the community at large in that they frustrate intergroup relations and civic objectives, may prove economically adverse to the Township and property values therein, [and] tend to create racial ghettos and disturb the peace and tranquility of the community," the ordinance forbids a canvass for a listing or sale of real property unless a prescribed form is filed with the township clerk no less than 10 nor more than 30 days before the date on which the canvass will take place. The term "canvassing" is defined to include "door to door soliciting or soliciting by the use of circulars, visitations, or any other means where the canvasser, or his employer has not been invited or requested by the owner * * * to obtain a listing of real property or to confer with the owner regarding a real estate transaction." The ordinance also forbids sundry acts related to the objective of preventing block-

busting. The township manager is assigned certain duties with respect to complaints received. Violations are punishable by a fine of not more than $200 or 30 days in jail or both.

As we have said, the single issue is whether it is beyond the power of the municipality to enact an ordinance dealing with blockbusting. The trial court held the municipality could not legislate upon the subject because (1) the subject inherently requires statewide treatment and therefore municipal legislation is foreclosed even if the State has not itself dealt with the subject, and (2) the State has preempted the area by its statute creating the Real Estate Commission and by a rule the Commission adopted thereunder.

I

*N. J. S. A.* 40:48–2 reads:

"Any municipality may make, amend, repeal and enforce such other ordinances, regulations, rules and by-laws not contrary to the laws of this state or of the United States, as it may deem necessary and proper for the good government, order and protection of persons and property, and for the preservation of the public health, safety and welfare of the municipality and its inhabitants, and as may be necessary to carry into effect the powers and duties conferred and imposed by this subtitle, or by any law."

Construed liberally in favor of local government as our Constitution, *Art.* IV, § VII, ¶ 11, requires to be done, this provision has been held to accomplish a broad grant of police power in addition, rather than merely ancillary, to the sundry detailed authorizations for municipal action contained in our statutes. See *Fred v. Mayor and Council of Borough of Old Tappan,* 10 *N. J.* 515, 519–521 (1952). Nonetheless there is an implied limitation upon this pervasive grant. As said in *Wagner v. Mayor and Municipal Council of City of Newark,* 24 *N. J.* 467, 478 (1957), the grant "relates to matters of local concern which may be determined to be necessary and proper for the good and welfare of local inhabitants, and not to those matters involving state policy or

in the realm of affairs of general public interest and applicability." So, for example, a municipality cannot legislate upon the subject of wills or title to real property. The needs with respect to those matters do not vary locally in their nature or intensity. Municipal action would not be useful, and indeed diverse local decisions could be mischievous and even intolerable. Hence the municipality may not legislate upon an aspect of a subject "inherently in need of uniform treatment." *In re Public Service Electric and Gas Co.*, 35 *N. J.* 358, 371 (1961).

Blockbusting does not come within that limitation. Blockbusting depends very much upon the local scene and varies accordingly in its intensity and hurt. Although the evil warrants the concern of the State itself, it would not be inappropriate to permit the municipalities also to wrestle with it. There is no inevitable need for a single statewide solution or for a single statewide enforcing authority. On the contrary, it may be useful to permit municipalities to act, for, being nearer the scene, they are more likely to detect the practice and may be better situated to devise an approach to their special problems. Then, too, municipalities may provide enforcement personnel the State has not supplied in adequate numbers and hence be able to nip an offensive movement with which a State agency could not deal until after the event.

We note in this connection that a relevant federal statute assumes the appropriateness of municipal action in this general area. Thus the Fair Housing Act of 1968, which includes a condemnation of blockbusting, 42 *U. S. C. A.* § 3604(e), stipulates that its provisions shall not be construed to invalidate any law of a State or "political subdivision of a State," 42 *U. S. C. A.* § 3615, and speaks of cooperation by the Secretary of Housing and Urban Development "with State and local agencies charged with the administration of State and local fair housing laws," 42 *U. S. C. A.* § 3616. Many municipalities have legislated with respect to blockbusting, see *Fair Housing Laws* (Housing and Home Fi-

nance Agency, Sept. 1964), *pp.* 234–238, and a fair-housing ordinance which included a blockbusting provision was upheld in *Chicago Real Estate Board v. City of Chicago,* 36 *Ill. 2d* 530, 224 *N. E. 2d* 793 (*Sup.`Ct.* 1967). With respect to the power of a municipality to deal with racial discrimination, see *District of Columbia v. John R. Thompson Company, Inc.,* 346 *U. S.* 100, 73 *S. Ct.* 1007, 97 *L. Ed.* 1480 (1953).

█ We are satisfied that municipal action cannot be barred by the concept that the subject is inherently beyond the delegated police power. The question then is whether this ordinance, in the words of *N. J. S. A.* 40:48–2 quoted above, is "contrary to the laws of this state," as the trial court also found. We turn to that issue.

## II

█ A municipality may not contradict a policy the Legislature establishes. *Auto-Rite Supply Co. v. Mayor and Township Committeemen of Woodbridge,* 25 *N. J.* 188 (1957). Hence an ordinance will fall if it permits what a statute expressly forbids or forbids what a statute expressly authorizes. Even absent such evident conflict, a municipality may be unable to exercise a power it would otherwise have if the Legislature has preempted the field. This follows from the basic principle that local government may not act contrary to State law. But an intent to occupy the field must appear clearly. *Kennedy v. City of Newark,* 29 *N. J.* 178, 187 (1959). It is not enough that the Legislature has legislated upon the subject, for the question is whether the Legislature intended its action to preclude the exercise of the delegated police power. *Masters-Jersey, Inc. v. Mayor and General Council of Borough of Paramus,* 32 *N. J.* 296 (1960). Hence the fact that the State has licensed a calling may not be enough to bar local licensure to protect an additional value of local concern. *Belleville Chamber of Commerce v. Town of Belle-*

*ville*, 51 *N. J.* 153, 157 (1968). The ultimate question is whether, upon a survey of all the interests involved in the subject, it can be said with confidence that the Legislature intended to immobilize the municipalities from dealing with local aspects otherwise within their power to act.

█ We are satisfied the Legislature did not intend to commit all facets of the public welfare in this area to the Real Estate Commission.

The real estate statute, *N. J. S. A.* 45:15-1 *et seq.*, is one of a number creating boards for the licensure of professions and occupations. The Real Estate Commission consists of five members, and the statute provides as to each member that "his vocation for a period of at least ten years prior to the date of his appointment shall have been that of a real estate broker." *N. J. S. A.* 45:15-5. The Commission is charged with licensing brokers and salesmen. Any person who violates the statute is subject to a monetary penalty for which the commission may sue under the Penalty Enforcement Law (*N. J. S. 2A*:58-1 *et seq.*). *N. J. S. A.* 45:15-23. The Commission may suspend or revoke a license, and may impose, "as an alternative to such revocation or suspension," a dollar penalty to be sued for under the Penalty Enforcement Law. *N. J. S. A.* 45:15-17. The acts for which a licensee may be penalized are listed in the section just cited. Blockbusting is not among them, but the same section empowers the Commission to make and enforce "all rules and regulations for the conduct of the real estate brokerage business consistent with the provisions of this act," and the Commission has adopted a rule against blockbusting.[1] The

---

[1] "Rule No. 26. BLOCK BUSTING

No broker or salesman shall affirmatively solicit the sale, lease, or the listing for sale or lease, of residential property on the grounds of alleged change of value due to the presence or prospective entry into the neighborhood of a person or persons of another race, religion or ethnic origin nor shall distribute, or cause to be distributed, material or make statements designed to induce a residential property owner to sell or lease his property due to such change in the neighborhood."

preemption argument includes the premise that a violation of the Commission's rule constitutes a "violation of any of the provisions of this article" within the meaning of the last-cited section of the statute, so that a broker or salesman who violates the rule could be subjected to the dollar penalty in lieu of revocation or suspension.

It is plain that a statute providing for licensure is not intended to exhaust the police power with respect to all misbehaviors of a licensee. So, for example, a licensee remains subject to indictment for crime committed in the course of his licensed profession or occupation, and this is true even though the same conduct is proscribed in the licensing statute and made the basis of suspension or revocation or the imposition of a dollar penalty in lieu thereof. This is not to diminish the duty of the licensing authority to ferret out the miscreants, but rather to emphasize that the Legislature did not choose to commit the entire public welfare to the licensing authority. In this connection, we note that still another statute, the Law against Discrimination, makes it unlawful for any real estate broker or salesman to do or to refuse to do certain things on the basis of race, creed, color, national origin or ancestry, *N. J. S. A.* 10:5-12, *subd.* h, and grants authority to the Division on Civil Rights to pursue an offender even though the Real Estate Commission could also move against the same misconduct.

The statutes just referred to are of course State enactments, but they do serve to demonstrate that the Legislature did not intend to vest the total police power in the Real Estate Commission. We therefore should not easily assume a statute providing for statewide licensure was intended to bar the municipalities from protecting their citizens from offensive conduct by the licensees. Indeed,

Since argument before us the rule has been amended but in no way material to the case at hand. We note that the rule applies only to licensees of the Commission whereas the ordinance reaches "any person" who does a forbidden act, but since the licensed real estate broker and salesman are very much a target of the ordinance, the preemption issue is critical.

the very structure of the real estate statute militates against that proposition, for a commission recruited exclusively from the membership of a profession or occupation is hardly the appropriate guardian of the whole public interest. It is one thing thus to enable an interested group to elevate the standards of fitness and performance in its specialty. It is something different to depend upon the interested group to give the public all the protection normally provided by criminal or *quasi*-criminal sanctions.

Nor are we persuaded to that view by the possibility that conflicting results may be reached if a licensee is prosecuted in a court under an ordinance and also before the Commission under its rule covering the same misconduct. That possibility attends all licensure situations. A member of the Bar is subject to prosecution under State and local laws notwithstanding that the misdeed may also call for an ethics proceeding against him. Each of the governmental agencies concerned is charged with guarding a separate public interest. *In re Mattera,* 34 *N. J.* 259, 266–267 (1961). There is good reason thus to distribute the total power of the State.

Hence in *Mogolefsky v. Schoem,* 50 *N. J.* 588 (1967), we held a municipality could enact an ordinance with respect to local activities of real estate brokers and salesmen, and specifically with respect to uninvited door-bell solicitation. Plaintiff suggests *Mogolefsky* nonetheless supports his position. He refers to the statement in that opinion that "We have no doubt of its [the Real Estate Commission's] power by rule and regulation to prohibit all uninvited solicitation of residents," 50 *N. J.,* at 600, at which point a footnote reference is made to the Commission's adoption of Rule 26 relating to blockbusting. Rule 26 was not involved in that case. We merely mentioned it in connection with our observation that the Real Estate Commission could have dealt with the subject matter involved in that case. We did not say that such a rule would displace municipal power.

The judgment is reversed.

*For reversal* — Chief Justice WEINTRAUB and Justices JACOBS, FRANCIS, PROCTOR, SCHETTINO and HANEMAN—6.

*For affirmance*—None.