MARLBORO TOWNSHIP, PLAINTIFF-APPELLANT, v.
FREEHOLD REGIONAL HIGH SCHOOL DISTRICT,
DEFENDANT-RESPONDENT.

Superior Court of New Jersey
Appellate Division

Argued December 14, 1983—Decided August 7, 1984.

Before Judges FRITZ, FURMAN and DEIGHAN.

*Charles I. Brodsky* argued the cause for appellant.

*James E. Collins* argued the cause for respondent (*Cerrato, O'Connor, Mehr & Saker,* attorneys).

*Irwin I. Kimmelman,* Attorney General of New Jersey, filed a brief amicus curiae (*James J. Ciancia,* Assistant Attorney General, of counsel; *Michael R. Clancy,* Deputy Attorney General, on the brief).

The opinion of the court was delivered by

FRITZ, P.J.A.D.

This appeal demonstrates graphically that which occurs when genuinely caring persons face each other armed with substantial and genuine conflicting policy concerns. There are no

factual conflicts; there was a stipulation below and in this court the parties have stipulated to the accuracy of the representations in the statement of facts in the brief of each. The problem is one of law. It is as easy to postulate as it is difficult to resolve.

Marlboro High School, within defendant District, has erected a "speed bump" in the entrance driveway closest to the Marlboro Fire Company firehouse.[1] This is a traffic barrier or restraint extending the width of the drive, about 18 inches across and approximately 4 to 6 inches higher at its rounded peak than the driveway surface. Its avowed and obvious purpose is to enforce very slow vehicular movement as a matter of safety.

There is in effect in the plaintiff Township an "Ordinance Adopting Basic Fire Control Measures and Regulating Governing Conditions Which Could Impede Or Interfere With Fire Suppression Forces," apparently adopted verbatim from the recommendation of the BOCA (Building Officials and Code Administrators International, Inc.) Fire Prevention Code/1978. That ordinance prohibits the erection and maintenance of speed bumps.

The respective interests are apparent. Both parties were assiduous in their desire to protect the students. Toward this end the school believed it was necessary to slow down the 108,000 student and teacher vehicles traversing the property during the school year. The Township targeted as its priority the absolute necessity of delivering emergency equipment to the site in the shortest time and in good working order in case

---

[1]Another speed bump is at the entrance to the parking lot and a third at the rear of the parking lot. Although we believe it irrelevant to the legal issue here we note that two other entrances to the premises do not have speed bumps and that plaintiff contends one of the bumps is across an aisle connecting the parking lot to the rear of the school building "where deliveries are made and where such high risk areas as boiler rooms are located."

of a catastrophe. No objective person of moral principles could reasonably fault either view.

Defendant did all it could and thought it must: at the time of construction it secured approval from the State Department of Education of construction plans showing the bumps. Plaintiff did all it could and, when defendant refused to remove the bumps, thought it must: its fire inspector swore out a summons charging defendant with violation of the ordinance.

The municipal court judge believed "municipal control is exclusive" in a matter such as this, convicted defendant, fined it $250 and ordered the bumps removed within 30 days. The District appealed. The Law Division judge believed that the matter was controlled by *Kaveny v. Montclair Bd. of Com'rs.*, 71 *N.J.Super.* 244 (App.Div.1962), certif. den. 36 *N.J.* 597 (1962), and accordingly

> ... that all thing [*sic*] pertaining to the safety of the children, all things pertaining to the construction of the building, all things pertaining to the construction of the facility, all things should be in the hands of one expertise body, one body that has the expertise to look at this whole thing on a statewide basis rather than local basis or each regional basis and say, "This is what we have determined from our experience to be good for the construction of schools, good for the safety of the children, good for the welfare of the children, good for the promotion of the educational benefits for the children." All of those things. Everything that relates to it is in the hands of the State Board of Education.

Convinced "beyond a reasonable doubt" that there was statutory pre-emption by virtue of *N.J.S.A.* 18A:18A–16 [2] and *N.J.S.A.*

---

[2] 18A:18A–16. Preparation and approval of plans and specifications for public schoolhouses

All plans and specifications for the erection, alteration, improvement or repair of public schoolhouses shall be drawn by or under the supervision of an appropriate officer employed by the board to whom such power shall have been delegated by the board of education.

No contract for the erection of any building or any part thereof by any board of education of any school district shall be entered into until the plans and specifications therefor have been submitted to, and approved by, the State board and no change in any such plans or specifications, so approved, shall be made unless the same shall have been submitted to, and approved by, the State board. A copy of all plans and specifications, and

18A:18A–49,[3] he determined that "the conviction is going to be reversed,"[4] effectively acquitting defendant.

While there is a lot of peripheral smoke around this particular brush fire, such as defendant's charge here that the municipal court judge erred in his reliance on *N.J.S.A.* 39:4–197 and 40:48–2.46 "as enabling authority necessary to enact" the ordinance and its complaint that since the high school is on a state highway review or approval or both by the State Department of Transportation was necessary for the ordinance to apply, the heart of the flame is the preemption issue. Nobody doubts that fire control is a police power province.

At the outset we are satisfied that *Kaveny v. Montclair Bd. of Com'rs., supra,* is not controlling. That case concerned the question of whether a school building was subject to compliance with the building code of the municipality in which the school was located. The vice which this court feared and which we held the then statute prevented by its preemption was the potential of the engrafting by a municipality of its own building code "onto the legislative requirements" the result of which "would be to introduce a potential element of discord and confusion into an area where the public interest is today so strong and where national goals are so intimately involved."

---

all changes therein, so approved, shall be filed forthwith with the State board.

3   18A:18A–49.   No municipal permit required for school building
   No board of education of any school district shall be required to secure the approval of its plans and specifications for the erection or alteration of any school building or vocational school building or any part thereof by the municipality in which the building is located; nor shall any board of education or any board of education of a county vocational school or any contractor doing work in connection with school buildings or county vocational school buildings be required to secure a building permit from the municipality.

4An appeal such as this is a trial *de novo* on the record. *R.* 3:23–1; 3:23–8(a). The judgment should be one of conviction or acquittal rather than affirmance or reversal. *R.* 3:23–8(e).

71 *N.J.Super.* at 247. This is a far cry from traffic control in the interest of fire protection, especially when the school building as such is not the subject of any of the ordinance regulation. With reference to *Kaveny* we pause here to note that the ordinance before us forwards "national goals" respecting safety and does not at all interfere with such goals expressed in building codes, the *Kaveny* concern.

█ At the same time we also note that the ordinance in question is not one requiring the obtaining of any municipal permits or approvals. It was a desire "to avoid [the] division of responsibility" such a requirement would impose that caused the Legislature to entrust, by the statutes in question, satisfaction respecting "the sufficiency of the school plant" to the State agency. *Roman Catholic Diocese of Newark v. Ho-Ho-Kus Borough*, 42 *N.J.* 556, 561 (1964). It is from that exposition by the Supreme Court that the purpose of the statutes can be gleaned. Obviously this area of State regulation, *i.e.*, assuring a single source of determination respecting the sufficiency of the school plant, consistent with the whole public interest and national goals as noted in *Kaveny*, is not at all transgressed by the ordinance.

No doubt the State has preempted the field respecting the requirements necessary to obtain building permits and licenses, including the matter of code regulation. This ordinance does not invade that field.[5]

Chief Justice Weintraub pointed out in *Kennedy v. City of Newark*, 29 *N.J.* 178 (1959) that:

... Before it can be said that the police power delegated to local government must remain inert, it must be clear that the Legislature intended to occupy the

---

[5]Nothing in this opinion should be deemed to imply that preemption is decided solely according to whether the subject matter is within or without the school "plant" or "structure."

> field or declared a policy at war with the decision made by local government. The delegated power may not be restrained upon the basis of speculation or dubious inference. The Constitution enjoins a liberal construction of legislation in favor of local authority. *Article* IV, § 7, *par.* 11. [At 187.]

The record in this case, considered in the light of applicable law, makes it impossible for us to say here "with confidence that the Legislature intended to immobilize the municipalit[y] from dealing with local aspects otherwise within their power to act." *Summer v. Teaneck,* 53 *N.J.* 548, 555 (1969).

Accordingly, we reverse the judgment of the Law Division and reinstate the conviction.

■ We would add a postscript with respect to the sentence. As we noted above the policy goals for which each party strives so vigorously are all beneficent and salutary. The question is a difficult one as demonstrated by the varying approaches and differing results in three courts. The matter concerned us sufficiently that we solicited and received from the Attorney General a brief amicus curiae. The question probably represents a sufficiently important concern in such a vital area that it is worthy of being brought to the attention of the Legislature toward the end of an accommodation of these competing policies. In such a circumstance we believe that the imposition of a fine upon defendant would accomplish none of the purposes for which such sanctions are designed, would be contrary to the public interest and, as a matter of fact, would be essentially unfair. Accordingly, in an exercise of our original jurisdiction, *R.* 2:10–5, our reinstatement of the conviction shall include a suspension of the fine imposed.

We reverse the judgment entered in the Law Division, reinstate the municipal court conviction in accordance with the foregoing and remand for the entry of such a judgment. No costs to either party on this appeal.