HELP–U–SELL OF TEANECK, PLAINTIFF, v. TOWNSHIP OF TEANECK AND WERNER H. SCHMID, TOWNSHIP MANAGER, DEFENDANTS.

Superior Court of New Jersey
Law Division Bergen County

Decided November 4, 1985.

*Terence O'Brien,* for plaintiff (*Cohen & Cohen,* attorneys).

*Jacob Schneider,* for defendants (*Schneider, Balt & Ciancia,* attorneys).

CIOLINO, A.J.S.C.

In this action plaintiff seeks declaratory and injunctive relief from enforcement of defendant Township of Teaneck's Code, § 26–22.1 *et seq.* relating to real estate canvassing. An agreed and stipulated statement of facts has been presented to the court and the issues submitted on briefs and oral argument.

Plaintiff challenges the continuing validity of the real estate canvassing code both facially and as applied on the following grounds:

(1) The code is preempted.

(2) The code directly conflicts with other State statutes.

(3) The code presents an unconstitutional abridgment of constitutionally protected speech by:

(a) providing for prior restraints;

(b) proscribing unsolicited direct sales activity generally without prior notice; and

(c) the ordinance is content based.

Plaintiff Help–U–Sell of Teaneck is a real estate brokerage service doing business in or about the Township of Teaneck. It intended to conduct a campaign to secure real estate listings by contacting homeowners in certain areas by the use of mailed circulars. Prior to the initiation of its campaign, plaintiff informed the township manager of its proposed activities and inquired if the activity was regulated by ordinance. Plaintiff was informed that the campaign appeared to violate Teaneck Township Code § 26–22.1 *et seq.*

The pertinent section of said code makes it unlawful for any person:

[t]o solicit a listing from any homeowner or occupant of a home who has not granted permission in writing to the canvasser to visit his home for the purpose of discussing the sale or leasing of the premises. No person shall file for said listing more than once in any six month period. [Teaneck Township Code (1973) § 26–22.3(h)]

Canvassing is defined as:

Door-to-door soliciting or soliciting by the use of circulars, visitations or any other means where the canvasser or his employer has not been invited or requested by the owner, as defined below, to obtain a listing of real property or to confer with the owner regarding a real estate transaction ... [Teaneck Township Code (1979) § 26–22.1]

Complaints of plaintiff canvassing for listings were received by the township manager. Plaintiff was invited to a conference to discuss the activity, however, plaintiff refused and filed this action for declaratory judgment.

In 1966, defendant township adopted code § 26–22.1 *et seq.* in an effort to curb blockbusting. Blockbusting, then rampant in the township, is the practice of causing homeowners to sell their property for fear that their neighborhoods' racial, religious or ethnic composit will soon change drastically.

In *Summer v. Teaneck*, 53 *N.J.* 548 (1969), a unanimous New Jersey Supreme Court upheld the validity of Teaneck's anti-blockbusting ordinance. The code, in its present form, has been modified since the *Summer* decision to provide for prior permission from the homeowner to be canvassed but exempted this requirement where the home has been publicly advertised for sale, or where the broker had been invited by the homeowner, or where there is but one home on a specific day to be solicited. Teaneck Township Code (1979) § 26–22.1.

This court is satisfied that the code prior to its post-*Summer* amendment is and remains a valid tool to combat blockbusting. The current ordinance as applied to plaintiff is overbroad. There is no doubt that a municipality may take appropriate actions to combat blockbusting. The *Summer* court clearly held that: "Blockbusting depends very much upon the local scene and varies accordingly in its intensity and hurt. Although the evil warrants the concern to the State itself, it would not be inappropriate to permit the municipalities also to wrestle with it." *Summer, supra,* 53 *N.J.* at 553.

Plaintiff argues that the Law Against Discrimination, *N.J. S.A.* 10:5–1 *et seq.,* specifically 10:5–12(h) and (k) preempts the subject. I disagree. While *N.J.S.A.* 10:5–1 *et seq.* does vest the State with the power to combat blockbusting, it is clear that the very nature of blockbusting requires local regulation and oversight.

Although the *Summer* court did not pass upon the preemption issue *viz-à-viz* the Law Against Discrimination, except to

note that the Division of Civil Rights can pursue one who violates the statute despite the fact the Real Estate Commission has similar authority, it did determine that the real estate statute, *N.J.S.A.* 45:15–1 *et seq.*, did not occupy the field in the area of blockbusting. It stated; "We [therefore] should not easily assume a statute providing for statewide licensure was intended to bar the municipalities from protecting their citizens from offensive conduct by the licensees." *Summer, supra,* 53 *N.J.* at 556. *See also Mogolefsky v. Schoem,* 50 *N.J.* 588 (1967).

In *Overlook Terrace Management Corp. v. West New York Rent Control Board,* 71 *N.J.* 451 (1976), the New Jersey Supreme Court outlined the factors to be considered in determining whether a State's statute preempts a local ordinance:

*1.* Does the ordinance conflict with state law, either because of conflicting policies or operational effect (that is, does the ordinance forbid what the Legislature has permitted or does the ordinance permit what the Legislature has forbidden)?

*2.* Was the state law intended, expressly or impliedly, to be exclusive in the field?

*3.* Does the subject matter reflect a need for uniformity? *Inganamort, et al. v. Bor. of Fort Lee, et al.,* 62 *N.J.* [521] at 528–530 has perceived "subject matter inherently in need of statewide treatment" in terms of jurisdictional power, posing the question of whether the State Constitution has prohibited delegation to the municipality of power to enact ordinances in a certain sphere.

*4.* Is the state scheme too pervasive or comprehensive that it precludes coexistence of municipal regulation?

*5.* Does the ordinance stand "as an obstacle to the accomplishment and execution of the full purposes and objectives" of the Legislature? [at 461–462; citations omitted]

■ Analysis of these factors demonstrates that the Code does not stand as an obstacle to implementation of the Law Against Discrimination. Rather, it adds one more weapon to the arsenal of antidiscrimination and antiblockbusting laws. I therefore find that the code is not preempted by *N.J.S.A.* 10:5–1 *et seq.*

The ordinance provides that any person or entity who intends to canvas in defendant township must file a form with the township manager no less than 20 days nor more than 30 days

prior to the scheduled canvassing. The form shall include the name and address of the canvasser, a listing of the blocks to be canvassed and the dates of the scheduled canvassing. At least 15 days prior to the canvas, the canvasser must send a request to canvas to each homeowner as well as a copy of the above mentioned listing. Teaneck Township Code (1973) § 26–22.2. No person shall file for said listing more than once in any six month period. A homeowner who has previously requested in writing that they do not wish to be contacted must be excluded from the proposed canvassing. Teaneck Township Code (1973) § 26–22.3(h).

The restrictions encompassed in the code effect the substance of communication. It is not a time, place or manner regulation. The distinction is critical.

A state or municipality may protect individual privacy by enacting reasonable time, place and manner regulations applicable to all speech irrespective of content. [citation omitted] But when the government, acting as censor, undertakes selectively to shield the public from some kinds of speech on the grounds that they are more offensive than others, the First Amendment strictly limits its power. [*Erznozik v. City of Jacksonville*, 442 *U.S.* 205, 209 (1975)]

*See also Pennsylvania Alliance for Jobs and Energy v. Council of the Borough of Munhall*, 743 *F.*2d 182, 185 (3 Cir.1984).

In *Linmark Associates, Inc. v. Township of Willingboro*, 431 *U.S.* 85, 97 *S.Ct.* 1614, 52 *L.Ed.*2d 155 (1977), the Supreme Court determined that a township ordinance banning "For Sale" and "Sold" signs from residential property to be unconstitutional. The Court found that the restriction was substantive and based on content, and noted the evil in restricting the free flow of useful data:

The Council's concern, then, was not with any commercial aspect of "For Sale" signs—with offerors communicating offers to offerees—but with the substance of the information communicated to Willingboro citizens. If dissemination of this information can be restricted, then every locality in the country can suppress any facts that reflect poorly on the locality; so long as a plausible claim can be made that disclosure would cause the recipients of the information to act "irrationally." [at 96, 97 *S.Ct.* at 1620]

Here the code restricts the free flow of data. Requiring homeowner approval prior to canvassing effectively bars plaintiff from communicating to homeowners regarding its broker-

age services. As such, content of speech is regulated and this cannot be tolerated. Once it is determined that the regulations are not content neutral, the court must characterize the speech. Here the restriction relates specifically to the economic interests of the speaker and its audience. As such, it is purely commercial speech. *Central Hudson Gas v. Public Service Comm. of N.Y.*, 447 *U.S.* 557, 561, 100 *S.Ct.* 2343, 2348, 65 *L.Ed.*2d 341 (1980); *Virginia Pharmacy Board v. Virginia Citizens Consumer Council*, 425 *U.S.* 748, 762, 96 *S.Ct.* 1817, 1825, 48 *L.Ed.*2d 346 (1976). Plaintiff's advertisement/solicitation, that is, the listings it wishes to send to individual homeowners, proposes a commercial transaction. As such, it falls within the area of commercial speech. *Zauderer v. Office of Disciplinary Counsel*, —— *U.S.* ——, 105 *S.Ct.* 2265, 2275, 85 *L.Ed.*2d 652 (1985).

It is not alleged that the plaintiff's advertisement/solicitation is either false, deceptive, misleading or concerning unlawful activities.

> Our general approach to restrictions on commercial speech is also by now well-settled. The States and the Federal Government are free to prevent the dissemination of commercial speech that is false, deceptive, or misleading, see *Friedman v. Rogers*, 440 *U.S.* 1, 99 *S.Ct.* 887, 59 *L.Ed.*2d 100 (1979), or that proposes an illegal transaction, see *Pittsburgh Press Co. v. Human Relations Comm'n*, 413 *U.S.* 376, 93 *S.Ct.* 2553, 37 *L.Ed.*2d 669 (1973). Commercial speech that is not false, or deceptive and does not concern unlawful activities, however, may be restricted only in the service of a substantial governmental interest, and only through means that directly advance that interest. *Central Hudson Gas & Electric, supra*, 447 *U.S.* at 566, 100 *S.Ct.* at 2351. [*Zauderer*, 105 *S.Ct.* at 2275]

The focus of the court's inquiry therefore revolves around whether the code serves a substantial governmental interest through means that directly advance that interest. Antiblockbusting regulations do serve a substantial governmental interest. *Summer, supra*, 53 *N.J.* at 551. This code now being tested is, however, too broad and restrictive.

The burden of establishing that certain prohibitions directly advance a substantial government interest is upon the municipality, the entity vested with the police power. *Zauderer, supra*, 105 *S.Ct.* at 2277. One cannot "[c]ompletely suppress

information when narrower restrictions on expression would serve its interest as well." *Central Hudson Gas, supra,* 447 *U.S.* at 565, 100 *S.Ct.* at 2351. For the township to meet its burden, it must narrowly tailor its code. The required disclosure requirements must "[b]e no more extensive than is necessary to serve the state interest." *Id.* at 572, 100 *S.Ct.* at 2355; *see, e.g., Zauderer, supra,* 105 *S.Ct.* at 2282.

To meet this requirement, plaintiff must be able to effectively communicate its ideas through the distribution of its leaflets and circulars, while at the same time allowing the township to regulate canvassing. This requires the elimination of the provisions in the code which mandate homeowner approval, which require a listing of the specific blocks to be canvassed to be given to the township, and which limit the filing for such a listing no more than once in any six-month period.

The ordinance requirement that the township receive notice as to whom is conducting these campaigns and the time frames when they will occur, is a valid exercise of police power. This requirement, previously passed upon in the *Summer* decision, continues to be a valid exercise of the township's authority.

Plaintiff will prepare the necessary order in accordance with this opinion.