**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2253-23

THOMAS BONFIGLIO, 1030
PARTNERS, LLC, and 1030
LIQUOR PARTNERS, LLC,

      Plaintiffs-Respondents,

v.

BOROUGH OF SEA BRIGHT, and
the MAYOR AND BOROUGH
COUNCIL OF THE BOROUGH
OF SEA BRIGHT,

      Defendants-Appellants.

_____

Argued April 1, 2025 – Decided July 14, 2025

Before Judges Gilson, Firko and Augostini.

On appeal from the Superior Court of New Jersey, Law Division, Monmouth County, Docket No. L-1883-17.

Richard J. Shaklee argued the cause for appellants (McLaughlin Stauffer & Shaklee, attorneys; Richard J. Shaklee and Heather N. Oehlmann, on the briefs).

Andrew J. Ball argued the cause for respondents (Davison Eastman Muñoz Paone, PA, attorneys; Andrew J. Ball, of counsel and on the brief).

PER CURIAM

This appeal arises from a challenge to the Borough of Sea Bright's (Borough) Noise Ordinance Number 17-2017 (Ordinance 17-2017). Defendants Borough of Sea Bright, and the Mayor and Borough Council of Sea Bright (collectively defendants) appeal from an October 23, 2023[1] order finding the Noise Ordinance void for two reasons: (1) it was contrary to and preempted by the specific grants of authority over noise nuisances to local health boards, which in this case was the regional board; and (2) Ordinance 17-2017 was unconstitutionally overbroad. Having conducted a de novo review of the record and the trial court's legal conclusions, we reject defendants' arguments and affirm the order holding Ordinance 17-2017 to be void for two, albeit different, reasons: (1) the Borough's reliance on the general grant of authority under the Home Rule Act (HR Act), N.J.S.A. 40:48-1, to enact a noise nuisance ordinance must yield to the more specific authority granted to the Monmouth County Regional Health Commission (MCRHC) under Chapter 3 of Title 26 of the

---

[1] The order was signed on October 23, 2023 and filed on October 24, 2023.

2

Health and Vital Statistics laws, N.J.S.A. 26:3-1 to -94 (Title 26); and (2) Ordinance 17-2017 is unconstitutionally overbroad.

I.

We discern the undisputed facts from the trial record. Plaintiffs Thomas Bonfiglio,[2] 1030 Partners, LLC, and 1030 Liquors Partners (collectively plaintiffs) own and operate Tommy's Tavern + Tap (Tommy's), a restaurant and bar in Sea Bright. Tommy's is located in the Borough's business-residential zone, which is a mixed-use zone and permits residential, government, and business uses.

The Borough is a member of the MCRHC pursuant to N.J.S.A. 26:3-92. In 1987, the MCRHC adopted the Public Health Nuisance Code of 1953, which in accordance with the Model Nuisance Code, Section IV, provides:

> It shall be unlawful for any person to make, cause or suffer or permit to be made or caused upon any premises owned, occupied or controlled by him or it, or upon any public street, alley or thoroughfare in this municipality, any unnecessary noises or sounds by means of the human voice, or by any other means or methods which are physically annoying to persons, or which are so harsh, or so prolonged or unnatural, or unusual in their use, time and place as to occasion physical discomfort, or which are injurious to the lives,

---

[2] According to plaintiffs' brief, Thomas Bonfiglio passed away on July 1, 2022, and Tommy's is now operated by the remaining plaintiffs.

health, peace and comfort of the inhabitants of this municipality or any number thereof.

On December 15, 1998, the Borough adopted a Noise Nuisance Ordinance which relied on reasonableness as a standard of enforcement and was based on a version of the Model Nuisance Code.

In 1992, the Borough additionally adopted an ordinance for noise control under the New Jersey Noise Control Act (NCA), N.J.S.A. 13:1G-1 to -23, administered by the New Jersey Department of Environmental Protection (the DEP), which "relies on decibel level as a standard of enforcement." The NCA requires that any municipal ordinance be at least more stringent than the laws of the State and approved by the DEP. N.J.S.A. 13:1G-21. The DEP approved the Borough's Noise Control Ordinance on July 16, 2009. On July 5, 2016, the Borough repealed the Noise Control Ordinance.

In 2015, plaintiffs applied to the Planning Board of the Borough of Sea Bright (the Board) for bulk variances and site plan approval for Tommy's. On March 24, 2015, the Board approved the application. Plaintiffs then sought amended site plan approval to include outdoor entertainment, but the Board expressed concerns about the impact of noise on neighboring properties. Plaintiffs withdrew their proposal, instead applying to the Board for additional seating in the rear yard of Tommy's. The Board approved this application and

4

issued a resolution memorializing same on June 28, 2017. The approval was conditioned on the requirement that the rear outdoor patio dining area would close at 10:00 p.m., and patrons would be required to leave the rear yard at that time.

On April 4, 2017, the Borough adopted Ordinance 05-2017, "An Ordinance Amending Chapter 146, Nuisances, Article II, Noise Nuisances of the Code of the Borough of Sea Bright." Section 146-8 of Ordinance 05-2017 established "[m]aximum permissible sound levels for certain nuisances" by decibel levels. The DEP did not approve Ordinance 05-2017. In a letter dated July 27, 2017, the DEP explained that "[t]he ordinance submitted on behalf of the Borough significantly varies from the Model [Ordinance] and is therefore not approved."

Because the DEP had not approved Ordinance 05-2017, the Borough adopted Ordinance 17-2017 on October 17, 2017, amending the Borough Code by deleting the measurable noise standards by decibel levels contained in Section 146-8. By removing the decibel levels from the Ordinance, the DEP's approval was no longer required. Ordinance 17-2017 constitutes the Borough's noise nuisance scheme, which is the subject of this appeal.

Section 146-5 of Ordinance 17-2017 states, in relevant part:

5

[Section] 146-5. Noise Nuisance Prohibited

A. It shall be unlawful for any person to make, continue or cause to be made or permitted any unnecessary and unreasonable loud, disturbing noise which is plainly audible and either annoys, injures or endangers the comfort, repose, health or welfare of others within the limits of the Borough. Such unlawful activity shall be considered a "noise nuisance" as further defined by [Section] 146-7 of this article.

B. It shall be unlawful for any person on property owned by him or her or under lease or other arrangement to allow or give permission to any other person on the property to make, continue or cause to be made or permitted any unnecessary and unreasonable loud, disturbing noise which is plainly audible and either annoys, injures or endangers the comfort, repose, health or welfare of others within the limits of the Borough. Such unlawful activity shall be considered a "noise nuisance" as further defined by [Section] 146-7 of this article.

Section 146-7 defines noise nuisances, in relevant parts, as:

[Section] 146-7. Definitions of Noise Nuisances

The following acts are declared to be loud, disturbing and unnecessary noise nuisances in violation of this article but said enumeration shall not be deemed to be exclusive, namely:

A. Radio, phonograph, instrument, singing[:] [t]he playing of any radio, phonograph or musical instrument or singing in such a manner or in such volume as to annoy or disturb the quiet, comfort or repose of persons within or outside of any dwelling, hotel or other type of

6

A-2253-23

residence, particularly during the hours between 10:00 p.m. and 8:00 a.m. of the following morning.

. . .

C. Shouting[:] [t]he excessing shouting, screaming or loud talking of peddlers, hawkers, vendors, patrons, or others who disturb the peace and quiet of the neighborhood.

. . .

Q. Other noises[:] [a]ny other continuous noise not enumerated above which is unreasonably loud, disturbing, unnecessary, and which annoys, injures or endangers the comfort, repose, health or welfare of others within the limits of the Borough.

On May 18, 2017, plaintiffs filed a complaint in lieu of prerogative writs, which they later amended, challenging the noise nuisance ordinance out of concern for its impact on their business.

The amended complaint included the following allegations: (1) the noise ordinance is arbitrary, unreasonable, and capricious (count one); (2) a violation of the NCA (count two); (3) inverse condemnation (count three); (4) a violation of the New Jersey Civil Rights Act (count four); (5) void for vagueness (count five); (6) a violation of the New Jersey Open Public Meetings Act (count six); (7) a violation of 42 U.S.C. § 1983 (count seven); and (8) conspiracy to deprive plaintiffs of their rights under 42 U.S.C. §§ 1983 and 1985 (count eight). The

7

parties agreed to dismiss counts four, six, seven, and eight, and further agreed to sever count three. Counts one, two and five remained unresolved.

On December 7, 2018, and March 5, 2019, trial was conducted on these remaining counts. On October 23, 2023, the court entered an order and accompanying written decision finding Ordinance 17-2017 void for two reasons: (1) it was preempted by the MCRHC noise ordinance; and (2) it was unconstitutionally overbroad. On February 22, 2024, a final order was entered resolving the matter, after plaintiffs advised they were withdrawing the inverse condemnation claim. This appeal followed.

Defendants contend the trial court erred by finding Ordinance 17-2017 void and assert two main arguments for our consideration, alleging the trial court improperly (1) concluded that the Borough, by delegating its authority to the MCRHC under the Local Health Services Act, N.J.S.A. 26:3A2-2, was preempted from regulating noise nuisance pursuant to authority granted to it under the HR Act; and (2) found Ordinance 17-2017 unconstitutionally overbroad. While we agree with the trial court that Ordinance 17-2017 is unconstitutionally overbroad, we hold it is also void, not on preemption grounds, but instead, because the municipality's general authority to enact Ordinance 17-2017 must yield to the MCRHC's more specific authority pursuant to Title 26.

8

II.

A municipal ordinance is presumed valid and should be construed liberally in favor of the municipality. State v. Clarksburg Inn, 375 N.J. Super. 624, 632 (App. Div. 2005) (first citing First Peoples Bank of N.J. v. Twp. of Medford, 126 N.J. 413, 418 (1991); and then citing State v. Golin, 363 N.J. Super. 474, 481 (App. Div. 2003)). We review de novo a trial court's legal interpretation of an ordinance. Bubis v. Kassin, 184 N.J. 612, 627 (2005) (citing In re Distrib. of Liquid Assets, 168 N.J. 1, 11 (2001)); see also Atl. Container, Inc. v. Twp. of Eagleswood Plan. Bd., 321 N.J. Super. 261, 269 (App. Div. 1999). In that regard, "a trial court's legal conclusion is not entitled to any special deference." State v. Krause, 399 N.J. Super. 579, 581 (App. Div. 2008) (citing State v. Drury, 190 N.J. 197, 209 (2007)).

A. Regulation of Noise.

The regulation of noise in New Jersey involves various statutes and their regulations, specifically, the NCA, Title 26, and the HR Act. A municipality regulates noise by passing either a noise ordinance under the NCA or a nuisance ordinance.

1. The NCA.

General noise ordinances are governed by the NCA. The NCA vests the DEP with the power to adopt rules to carry out the intent of the NCA. N.J.S.A. 13:1G-4. Those DEP rules are found in N.J.A.C. 7:29-1.1 to -2.12. The DEP regulates noise emanating from a business based on decibel levels. N.J.A.C. 7:29-2.10.

2. Noise Nuisance Ordinances.

Noise is also regulated by nuisance ordinances. The nuisances and the abatement of nuisances are addressed in Chapter 3 of Title 26, N.J.S.A. 26:3-45 to -63. Chapter 3 also addresses local boards of health and requires each municipality to establish a board of health. N.J.S.A. 26:3-1. "Local boards of health are governmental agencies created for the purpose of exercising locally the police powers of the State with respect to matters of public health." Jones v. Buford, 71 N.J. 433, 436 (1976) (citing Zullo v. Bd. of Health of Woodbridge Twp., 9 N.J. 431, 435 (1952)).

"A local board of health may adopt rules, regulations or ordinances for its government . . . not inconsistent with law or the state sanitary code." N.J.S.A. 26:3-2. More particularly, "[t]he local board may pass, alter or amend ordinances and make rules and regulations to . . . define what shall constitute a

nuisance in . . . public or private places within its jurisdiction."  N.J.S.A. 26:3-45.

Local boards of health of two or more municipalities may "form an association to furnish such boards with public health services."  N.J.S.A. 26:3-84.  This association is known as a "regional health commission."  Ibid.  A regional health commission:

> [S]hall have jurisdiction in matters of public health within the geographic area of the participating municipalities. It shall succeed to all powers and perform all the duties conferred and imposed upon the municipal boards of health which it shall have superseded and, in addition, shall have all the powers and perform all the duties within the geographic area of the participating municipalities which by law are conferred and imposed upon any township, city or other local board of health in this State.
>
> [N.J.S.A. 26:3-92.]

3. The HR Act.

New Jersey's municipalities, under the HR Act, are granted broad powers to "make, amend, repeal and enforce ordinances," N.J.S.A. 40:48-1, in a variety of areas, including noise nuisance, that they deem "necessary and proper for the good government, order and protection of persons and property, and for the preservation of the public health, safety and welfare of the municipality and its inhabitants,"  N.J.S.A. 40:48-2; see also State v. Holland, 132 N.J. Super. 17, 22

(App. Div. 1975) ("It has long been established that municipalities in this State have the authority to adopt ordinances regulating or preventing loud, disturbing and unnecessary noises which are detrimental to the public health and welfare."); Bynum v. Mayor & Twp. Comm. of Winslow, 181 N.J. Super. 2, 6 (App. Div. 1981); Clarksburg Inn, 375 N.J. Super. at 633.

This grant of authority permits municipalities to exercise their police power by "mak[ing], amend[ing], repeal[ing] and enforc[ing] ordinances to . . . preserve the public peace and order; . . . to prevent disturbing noises; [and] . . . [p]rohibit annoyance of persons . . . ." N.J.S.A. 40:48-1. The principle of the home rule "finds [its] expression in the legislative choice to invest 'the police power of the State . . . in local government to enable local government to discharge its role as an arm or agency of the State and to meet other needs of the community.'" Fraternal Ord. of Police, Newark Lodge No. 12 v. City of Newark, 244 N.J. 75, 92 (2020) (omission in original) (quoting Inganamort v. Borough of Fort Lee, 62 N.J. 521, 528 (1973)).

III.

A. Preemption.

"Preemption is a judicially created principle based on the proposition that a municipality, which is an agent of the State, cannot act contrary to the State."

<u>Overlook Terrace Mgmt. Corp. v. Rent Control Bd. of W. N.Y.</u>, 71 N.J. 451, 461 (1976) (citing <u>Summer v. Teaneck</u>, 53 N.J. 548, 554 (1969)).  The initial inquiry is "whether the field or subject matter in which the ordinance operates, including its effects, is the same as that in which the State has acted."  <u>Ibid.</u>  "If the 'field or subject matter' of the municipal ordinance and state law are not the same, there is no preemption; if they are the same, then the question of preemption is further explored."  <u>Redd v. Bowman</u>, 223 N.J. 87, 109 (2015) (quoting <u>Overlook</u>, 71 N.J. at 461).

Our Supreme Court in <u>Overlook</u> identified five questions to consider "in determining the applicability of preemption" to a local ordinance:

> 1. Does the ordinance conflict with state law, either because of conflicting policies or operational effect (that is, does the ordinance forbid what the Legislature has permitted or does the ordinance permit what the Legislature has forbidden)?
>
> 2. Was the state law intended, expressly or impliedly, to be exclusive in the field?
>
> 3. Does the subject matter reflect a need for uniformity?
> . . . .
>
> 4. Is the state scheme so pervasive or comprehensive that it precludes coexistence of municipal regulation?
>
> 5. Does the ordinance stand as an obstacle to the accomplishment and execution of the full purposes and objectives of the Legislature?

[71 N.J. at 461-62 (internal quotation marks and citations omitted).]

Here, the trial court's analysis reasoned that some of these considerations weighed in favor of invalidating Ordinance 17-2017 on preemption grounds.

At issue in this case is the validity of Ordinance 17-2017 pursuant to the Borough's authority under the HR Act, and whether the Borough was preempted from enacting the Ordinance by the MCRHC's authority under Title 26. In addition to relying on the HR Act, defendants rely on several decisions to support the assertion that the HR Act can serve as authority for the adoption of a noise nuisance ordinance. Bynum, 181 N.J. Super. at 2; State v. Friedman, 304 N.J. Super. 1 (App. Div. 1997); Clarksburg Inn, 375 N.J. Super. at 624.

Defendants contend that the trial court erred in finding preemption applicable under these circumstances because preemption does not arise simply because some other local government entity has chosen to regulate in the field, even where jurisdiction may overlap. Defendants further assert that preemption only exists if the Legislature has acted to preclude other forms of rule or prescription.

A preemption analysis does not apply here for two reasons: (1) the State authorizes municipalities to regulate noise, and (2) the conflict here is not between state and local law but between two local ordinances: the Model

14

Nuisance Ordinance enacted under Title 26 and Ordinance 17-2017 enacted under the HR Act.

Consequently, the real issue is whether the two ordinances can co-exist. To resolve the conflict between these two local ordinances, we look to the municipality's authority under the more specific provisions in Title 26, and not the more general grant of authority under the HR Act. It is on this ground that Ordinance 17-2017 is void.

We begin our analysis by recognizing that "state law clearly contemplates and, indeed, expressly authorizes municipal ordinances regulating noise" with two limitations: "(1) the local ordinance must be 'more stringent' than any regulations issued under the NCA . . . ; and (2) the ordinance must be submitted for approval to the [DEP]." Krause, 399 N.J. Super. at 583 (internal citation omitted). Even though the Borough did not enact Ordinance 17-2017 under the NCA, this statutory scheme is the authority for a municipality to regulate noise. Because the conflict in this case is not between a state law and local ordinance, but rather, between two ordinances, we examine further the municipality's authority to enact each ordinance.

N.J.S.A. 26:3-45 requires that nuisance ordinances be passed by the local health board. Title 26 also permits a regional health commission, establishing

"jurisdiction in matters of public health within the geographic area" to lie with "[e]ach regional health commission." N.J.S.A. 26:3-92. Here, it is undisputed that in matters of public health, the Borough's local health board delegated its authority to the MCRHC—a regional commission.

As a result of this delegation of authority, the MCRHC has jurisdiction to address noise nuisances in the Borough, and it has done so by adopting a noise nuisance ordinance. See N.J.S.A. 26:3-45, -92, -93. Specifically, the MCRHC adopted the Model Nuisance Code in 1987, which addresses the same subject as Ordinance 17-2017.

Defendants contend, alternatively, that the HR Act authorizes the Borough to enact another noise nuisance ordinance. We have consistently upheld the lawful exercise of police power by a municipality to adopt an ordinance regulating common law noise nuisance under the HR Act. See Holland, 132 N.J. Super. at 22; Bynum, 181 N.J. Super. at 6; Clarksburg Inn, 375 N.J. Super. at 633. However, the HR Act is a broad grant of authority. While "[t]he Legislature has [generally] authorized municipalities 'to prevent disturbing noises,'" this "general authorization was further refined in the [NCA] of 1971." Krause, 399 N.J. Super. at 582 (first quoting N.J.S.A. 40:48-1; and then citing N.J.S.A. 13:1G-1 to -23).

16

It is also well-established in New Jersey that, "[i]n the absence of legislative intent to the contrary . . . a specific statutory provision dealing with a particular subject prevails over a general provision." In re N.J. Firemen's Ass'n Obligation, 230 N.J. 258, 278 (2017) (omission in original) (citing Trinity Cemetery Ass'n, Inc. v. Twp. of Wall, 170 N.J. 39, 46 (2001)). While statutes must be read in pari materia, "[w]hen there is a conflict between a general and a specific act on the same subject, the latter shall prevail." Kingsley v. Wes Outdoor Advert. Co., 55 N.J. 336, 339 (1970) (citing State, by Highway Comm'r v. Dilley, 48 N.J. 383, 387 (1967)). The grant of authority under N.J.S.A. 40:48-1 is further refined by the requirement that municipalities establish public health boards with jurisdiction over matters of public health, and noise is a matter of public health. N.J.S.A. 26:3-92 and -93.

Therefore, we conclude a conflict exists between Ordinance 17-2017 and MCRHC's adoption of the Model Nuisance Code. This conflict arose from the Borough enacting Ordinance 17-2017 from a general grant of authority under the HR Act, while the MCRHC, under its specific authority pursuant to Title 26, had enacted the Model Noise Nuisance Ordinance.

Defendants argue there is no pervasive and comprehensive scheme which expressly or impliedly governs the field of regulation of noise, and therefore,

17

they are not preempted from adopting a noise nuisance ordinance under the HR Act. As the trial court pointed out, however, the MCRHC's Model Nuisance Ordinance is part of a comprehensive statutory and administrative framework adopted by the MCRHC under a specific grant of authority.

Under Title 26 provisions, the MCRHC is the entity authorized to enact noise nuisance ordinances and had done so through its adoption of the Model Nuisance Code and the Model Nuisance Ordinance. Ordinance 17-2017 is inconsistent with the Model Nuisance Code and the Model Nuisance Ordinance. Moreover, as the trial court noted, the language of the competing ordinances "describ[ing] the prohibited behavior varies considerably, demonstrating the need for clear authority by the regional health commission."

While defendants contend that the NCA is inapplicable because the ordinance is a noise nuisance ordinance and not a noise ordinance, it is worth noting that the Borough attempted previously to secure the DEP's approval of two proposed noise ordinances—in 2015 (Noise Ordinance Number 06-2015) and then again in 2017. On both occasions, the DEP did not approve the noise ordinances because they "significantly varied from the Model" noise ordinance.

On October 3, 2017, a revised noise nuisance ordinance, and "not a noise ordinance subject to the approval of the [] DEP," was presented to the Borough

18

Council.  To avoid needing the DEP's approval, the ordinance was changed to eliminate the decibel measures.  According to one of the council members, on advice of the Borough's attorney, the decibel levels were removed "due to DEP regulations."  Cognizant of this regulated framework, the Borough revised the noise ordinance to circumvent the NCA and recharacterized it as a noise "nuisance" ordinance to avoid needing the DEP's approval.

Defendants also rely on several of our prior decisions to support the assertion that the HR Act can serve as authority for the adoption of a noise nuisance ordinance.  Bynum, 181 N.J. Super. at 2; Friedman, 304 N.J. Super. at 1; Clarksburg Inn, 375 N.J. Super. at 624.  They argue that these cases stand for the proposition that municipalities have the authority pursuant to the HR Act to adopt ordinances to regulate noise despite the existence of and grant of authority to the MCRHC.  However, these cases are distinguishable.

In Friedman, we held that an anti-noise ordinance was not unconstitutionally vague as applied, and in Clarksburg Inn, we held that an anti-noise ordinance was not unconstitutionally vague or overbroad.  304 N.J. Super. at 10; 375 N.J. Super. at 642.  These cases do not address the conflict issue arising between the sources of a municipality's authority to grant noise nuisance

ordinances. Rather, the cases are more relevant to defendants' overbreadth arguments.

In Bynum, we addressed the issue of preemption in the context of the federal preemption of a municipal ordinance pertaining to the regulation of radio communication. 181 N.J. Super. at 5. We held that there was no express or implied intent by Congress to exercise exclusive control in the field of amateur radio operation, and we acknowledged local government's role in retaining regulatory interests outside of those governed by federal regulations. Id. at 5-6. We further acknowledged a municipality's authority to adopt ordinances to regulate or prevent "noise detrimental to the public health and welfare." Id. at 6 (citing Holland, 132 N.J. Super. at 22). However, we did not address the delegation of that authority or a potential conflict between general and specific grants of authority under state law. See ibid.

Based on our de novo review, we hold that the Borough's reliance on the general grant of authority under the HR Act to enact a noise nuisance ordinance must yield to the more specific authority granted to the MCRHC under Chapter 3 of Title 26. Thus, we conclude that Ordinance 17-2017 is void on these grounds.

B. Overbreadth.

The trial court also held Ordinance 17-2017 void as unconstitutionally overbroad. Defendants contend that the trial court erred in making this ruling because Ordinance 17-2017 is clear on its face, serves a legitimate and rational purpose, and is therefore not overbroad. Having reviewed the matter de novo, we hold that Ordinance 17-2017 is overbroad and thus void because in prohibiting "excessive . . . loud talking of . . . patrons, or others who disturb the peace and quiet of the neighborhood," Ordinance 17-2017: (1) lacks clarity and (2) allows for unchecked discretion and subjectivity in its enforcement. "Overbreadth and vagueness are analytically distinct concepts that implicate different constitutional concerns." State v. Hill, 474 N.J. Super. 366, 376 (App. Div. 2023), rev'd on other grounds, 256 N.J. 266 (2024). Overbroad statutes are flawed because "[t]hey invite 'excessive governmental intrusion into protected areas' by 'extend[ing] too far.'" State v. Carter, 247 N.J. 488, 518 (2021) (second alteration in original) (quoting Karins v. Atl. City, 152 N.J. 532, 544 (1998)).

A statute involving an expressive activity, such as speech, is unconstitutionally overbroad when the "statute 'reaches a substantial amount of constitutionally protected conduct,'" ibid. (quoting State v. Burkert, 231 N.J. 257, 276 (2017)), and it "effectively suppresses a large amount of speech that

adults have a constitutional right to receive and to address to one another," <u>Reno v. ACLU</u>, 521 U.S. 844, 874 (1997). Therefore, while a municipality may regulate speech, an ordinance regulating speech must be narrowly tailored to address important state interests. <u>See</u> <u>State v. Profaci</u>, 56 N.J. 346, 350-51 (1970).

When determining whether an ordinance is overbroad, the first task is to determine "whether the language of the statute, given its normal meaning, is so broad that its sanctions may apply to conduct protected by the Constitution." <u>Id.</u> at 350; <u>see also</u> <u>State v. B.A.</u>, 458 N.J. Super. 391, 407 (App. Div. 2019). Next, the court may consider the following factors:

> (1) whether a substantial interest worthy of protection is identified or apparent from the language of the statute; (2) whether the terms of the regulation are susceptible to objective measurement by men of common intelligence; (3) whether those charged with its enforcement are vested only with limited discretion; (4) if penal, whether some element of knowledge or intent to obstruct a state interest is required; and (5) whether its clarity is dependent upon manifold cross-reference to inter-related enactments or regulations.
>
> [<u>Profaci</u>, 56 N.J. at 351 (citing <u>Landry v. Daley</u>, 280 F. Supp. 938, 951-53 (N.D. Ill. 1968)).]

The resolution of the issue often depends upon a determination of whether "the scope of the power permitted [to] these officials is so broad that the exercise

of constitutionally protected conduct depends on their own subjective views as to the propriety of the conduct"; if so, "the statute is unconstitutional." Id. at 350. We recognize that "formulating a specific and precise ordinance regulating noise and disturbances of the peace is a difficult task." Clarksburg Inn, 375 N.J. Super. at 636 (quoting Friedman, 304 N.J. Super. at 6) (holding that Millstone Township's Ordinance Number 3-15 was not overbroad when it prohibited "any loud, unnecessary or unusual noise or any noise which either annoys, disturbs, injures or endangers the comfort, repose, health, peace or safety of others").

Here, the trial court concluded that Ordinance 17-2017 was overbroad because it permitted the "subjective application of a rule that prohibits the sound generated by an unamplified human voice, during daytime hours, that can be heard [fifty] feet from the sound generator's property line . . . ." Before us, defendants argue that this court has upheld very similar ordinances, namely the ordinance in Clarksburg Inn. Defendants further assert that the distance could be greater in the present case because the measurement begins from the property line, while the measurement in Clarksburg Inn began at the building. 375 N.J. Super. at 637.

Plaintiffs counter that Ordinance 17-2017 differs from the ordinance in Clarksburg Inn, and maintain there is no way to measure violations objectively, as admitted during the public hearing on April 4, 2017.

The focus of this challenge concerns the following language in Ordinance 17-2017:

> C. Shouting[:] [t]he excessing shouting, screaming or loud talking of peddlers, hawkers, vendors, patrons, or others who disturb the peace and quiet of the neighborhood.
>
> . . .
>
> P. Other noises[:] [a]ny other continuous noise not enumerated above which is unreasonably loud, disturbing, unnecessary, and which annoys, injures or endangers the comfort, repose, health or welfare of others within the limits of the Borough.

Furthermore, Ordinance 17-2017 defines proof of violation as:

> Proof of violation of any subsections of [Section] 146-7 of this article shall be determined by plainly audible means as detected at more than fifty (50) feet from the property line from which the noise nuisance is emanating or from within the receptor's premises in the event the source and the receptor share a common or abutting wall, floor or ceiling or are on the same property.

The language of the Millstone Township Ordinance Number 3-15,[3] which we

upheld in Clarksburg Inn, included the following provisions:

> Without intending to limit the generality of subsection 3-15.1, the following acts are hereby declared to be examples of loud, disturbing and unnecessary noise in violation of this section:
>
> a. Radios; Televisions; Phonographs . . . . The operation of such a set, instrument, phonograph, machine or device so that it is clearly audible at a distance of a hundred (100) feet from the building, structure or vehicle in which it is located shall be prima facie evidence of a violation of this section.
>
> b. Yelling; Shouting.  Yelling, shouting, hooting, whistling or singing on the public streets, particularly between the hours of 11:00 p.m. and 7:00 a.m., or at any time or place, which annoys or disturbs the quiet, comfort or repose of persons in any office, dwelling, hotel, motel or other type of residence or of any persons in the vicinity.

Beginning with the plain language of Ordinance 17-2017, there are two

meaningful distinctions from the Clarksburg Inn ordinance:  (1) Ordinance 17-

2017 prohibits "loud talking of . . . patrons . . . who disturb the peace and quiet

of the neighborhood"; "[y]elling, shouting, hooting, whistling or singing on the

public streets . . . at any time or place, which annoys or disturbs the quiet,

---

[3]  The record contains a copy of the entire Millstone Township Ordinance Number 3-15, which is partially quoted in Clarksburg Inn, 375 N.J. Super. at 633.

comfort or repose"; and (2) "proof of violation . . . shall be determined by plainly audible means as detected at more than fifty (50) feet from the property line from which the noise nuisance is emanating . . . ."

First, unlike the Clarksburg Inn ordinance, Ordinance 17-2017 restricts "loud talking." As the trial court aptly pointed out, this prohibition could include unamplified human voices of "family members speaking with each other while enjoying a backyard barbecue, or the shouting of children playing in a swimming pool or jumping on a trampoline . . . ."

Although defendants argue that such activities would not result in a violation of the Ordinance 17-2017, this argument underscores Ordinance 17-2017's subjective enforcement nature. Moreover, Ordinance 17-2017 was amended to remove decibel levels, an objective measurement, as a gauge to evaluate the reasonableness of the sound levels. Additionally, Ordinance 17-2017 does not limit the definition of noise nuisances to sounds that are generated only during the late evening.

In considering the Profaci factors, most support the trial court's finding that Ordinance 17-2017 is overbroad. Profaci, 56 N.J. at 351. First, "a substantial interest worthy of protection," is clearly implicated in the Ordinance's restrictions. Ibid. Second, as to "whether the terms of the

regulation are susceptible to objective measurement" and "whether those charged with its enforcement are vested only with limited discretion," both criteria are not met by the subjective nature of the ordinance's enforcement. Ibid. Indeed, during the April 4, 2017 council meeting,[4] a council member acknowledged the subjective nature of Ordinance 17-2017's enforcement.

The Ordinance 17-2017's "clarity" is not "dependent upon manifold cross-reference to inter-related enactments or regulations." Ibid. Because there is a lack of connection to other inter-related enactments or regulations, this factor does not support Ordinance 17-2017's validity by adding clarity through other laws. Thus, in considering these factors, we agree with the trial court's determination that the "subjective application of a rule that prohibits sound generated by an unamplified human voice, during daytime hours, can be heard [fifty] feet from the sound generator's property line and which 'annoys, injures or endangers the comfort, repose, health or welfare of others within the limits of the Borough'" cannot withstand constitutional muster.

In sum, we hold that the Borough's reliance on the general grant of authority under the HR Act to enact a noise nuisance ordinance must yield to

---

[4] The record did not include the transcript of the April 4, 2017 council meeting.

the more specific authority granted to the MCRHC under Title 26. We also hold that Ordinance 17-2017 is unconstitutionally overbroad.

To the extent we have not addressed any of defendants' remaining arguments, those arguments are without sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

M.C. Harley

Clerk of the Appellate Division

A-2253-23