TEAMSTERS LOCAL 331, PLAINTIFF, v. CITY OF ATLANTIC CITY, A MUNICIPAL CORPORATION, DEFENDANT.

Superior Court of New Jersey
Chancery Division Atlantic City

Decided November 19, 1981.

*Howard J. Casper* for plaintiff.

*Matthew H. Powals,* City Solicitor, for defendant.

*Brian Guest* for *amici curiae* New Jersey State AFL–CIO and Local No. 198 of the International Association of Firefighters (*Hartman, Schlesinger, Schlosser & Faxon,* attorneys).

HAINES, A.J.S.C.

This action seeks a declaratory judgment concerning the legality of the following paragraph in a collective bargaining agreement entered into between plaintiff Teamsters Local 331 and defendant City of Atlantic City:

## HEALTH AND WELFARE PLAN

The City shall contribute an amount equal to medical, dental, optical and prescriptions plus 10% to the Union Health & Welfare Plan of Local 331 I.B.T., provided it is certified as legal and valid by appropriate State agency or the Courts of New Jersey. Second year to be reopened. Current cost $112.00–$115.00 per month for family coverage. If upgraded Union is entitled to increase.

The New Jersey State AFL–CIO and Local # 198 of the International Association of Firefighters appear *amici curiae.* The matter has been submitted on the record with briefs.

A. *Preemption*

City argues that the State, by legislation, has preempted the field of insurance coverage for municipal employees. It relies upon two statutes, the first of which is *N.J.S.A.* 40A:10–17 and it provides:

> Any local unit or agency thereof, herein referred to as employers, may:
> a. Enter into contracts of group life, accidental death and dismemberment, hospitalization, dental, medical, surgical, major medical expense, or health and accident insurance with any insurance company or companies authorized to do business in this State, or may contract with a nonprofit hospital service, medical service or dental service corporation with respect to the benefits which they are authorized to provide respectively. The contract or contracts shall provide any one or more of such coverages for the employees of such employer and may include their dependents;
> b. Enter into a contract or contracts to provide drug prescription and other health care benefits, or enter into a contract or contracts to provide drug prescription and other health care benefits as may be required to implement a duly executed collective negotiations agreement, or as may be required to implement a determination by a local unit to provide such benefit or benefits to employees not included in collective negotiations units.
> Nothing herein contained shall be deemed to authorize coverage of dependents of an employee under a group life insurance policy or to allow the issuance of a group life insurance policy under which the entire premium is to be derived from funds contributed by the insured employees.

The second statute to which plaintiff points is *N.J.S.A.* 52:14–17.25 *et seq.* It establishes a State fund to which municipalities may make contributions and from which the State Health Benefits Commission may purchase contracts with providers to acquire medical coverage for municipal employees. A detailed program is thereby established.

 The preemption doctrine is designed to cure statutory or regulatory conflicts between two levels of government, a problem which is not present here. This case pits private action against sovereign action. There is neither logic nor conviction in the argument that the two statutes, because they permit government contracts for health and welfare benefits, categorically preclude private acquisition of these benefits. Indeed, the

contention dissolves in the face of the discretionary nature of both statutes. *N.J.S.A.* 40A:10–17 provides that a municipality "may ... enter into contracts." *N.J.S.A.* 52:14–17.37 provides that "any employer eligible for participation in the program *may* elect such participation." Emphasis supplied. A basic tenet of statutory construction is that the word "shall" appearing in a statute is presumed to be used in a mandatory sense, while "may" is permissive and directory. *Cryan v. Klein,* 148 *N.J.Super.* 27 (App.Div.1977); *Bell v. Western Emp. Ins. Co.,* 173 *N.J.Super.* 60 (App.Div.1980). In *N.J. Policemens Benevolent Ass'n. v. N.J. State Health Benefits Comm.,* 153 *N.J.Super.* 152 (App.Div.1977) the court, referring to *N.J.S.A.* 52:14–17.25 et seq. said that "participation in the State Health Benefit Program (hereinafter SHBP) is made available to the local governments unit at their voluntary election" at 155.

■ Furthermore, city does not meet the criteria established for preemption. These were laid down in *Overlook Terrace Mgt. Corp. v. Rent Control Bd. of West N.Y.,* 71 *N.J.* 451 (1976), as follows:

> 1. Does the ordinance conflict with state law, either because of conflicting policies or operational effect (that is, does the ordinance forbid what the Legislature has permitted or does the ordinance permit what the Legislature has forbidden)? ...
>
> 2. Was the state law intended expressly or impliedly, to be exclusive in the field? ...
>
> 3. Does the subject matter reflect a need for uniformity? ...
>
> 4. Is the state scheme so pervasive or comprehensive that it precludes coexistence of municipal regulation? ...
>
> 5. Does the ordinance stand "as an obstacle to the accomplishment and execution of the full purposes and objectives" of the Legislature? [at 461–462; citations omitted]

City's contract does not permit anything which the Legislature has forbidden; the statutes upon which city relies are permissive. For the same reason, it cannot be said that the state law was intended to be exclusive. There is no need for uniformity. On the contrary, there is every reason to permit flexibility in contracts which provide employee health and welfare benefits. The state scheme is not comprehensive; municipalities are not required to provide benefits through the state program. The

ordinance is not an obstacle to the accomplishment of legislative purposes, since those purposes are entirely permissive. The *Overlook* tests have not been met.

## B. *Delegation of Authority*

■ City argues that the agreement authorizes the Union to manage public funds, thereby constituting an improper delegation of the municipality's duty to account for public monies. The argument overlooks the true nature of the agreement. It merely provides an alternative form of compensation to city employees, compensation over which the municipality has no more control that it would have over the salary paid to an employee, once the payment has left the city treasury. Here city's obligation ends with the execution of the collective bargaining agreement negotiated with the union. The health and welfare fund is a private substitute for discretionary state activity; any insurance contracts entered into by the union will be purely private contractual arrangements, not delegated municipal transactions.

## C. *Compensation*

■ The municipality's right to enter into a collective bargaining agreement providing for the compensation of its employees is unquestionable. *N.J.S.A.* 34:13A–5.3, a part of the New Jersey Employer-Employee Relations Act, specifically provides that "the majority representative and designated representatives of the public employer shall meet at reasonable times and negotiate in good faith with respect to grievances and terms and conditions of employment". *State v. State Supervisory Emp. Ass'n.*, 78 *N.J.* 54 (1978), defined negotiable terms and conditions of employment as:

> ... those matters which intimately and directly affect the work and welfare of public employees and on which negotiated agreement would not significantly interfere with the exercise of inherent management prerogatives pertaining to the determination of governmental policy. [at 67]

The question of compensation falls squarely within the concept of terms and conditions of employment. *Englewood Bd. of Ed. v. Englewood Teachers*, 64 *N.J.* 1, 6–7 (1973).

■ Support for the conclusion that the contribution by city to the union's health and welfare fund constitutes compensation is provided by several prior decisions. The first was *N.J. Civil Service Ass'n. v. Mayor, Camden*, 135 *N.J.Super.* 308 (Law Div.1975). The question there addressed was whether a municipality had authority to enter into a collective bargaining agreement providing dental services for its employees. The court said:

> .... [T]he contract is sustainable under *N.J.S.A.* 40:69A–29(a) which authorizes the fixing of compensation of municipal employees, as well as *N.J.S.A.* 34:13A–5.3. By providing dental service or benefits the municipality is, in a sense, merely substituting the service or benefits with the payment of additional compensation agreed to in the contract. The agreement to provide these benefits was not, therefore, *ultra vires* the city. [at 313]

In *Camden v. Dicks*, 135 *N.J.Super.* 559 (Law Div.1975), the court considered the authority of the City of Camden to agree to payment for unused sick leave as a part of severence compensation. The court said:

> Municipalities operating under the Faulkner Act ... have ample authority under *N.J.S.A.* 40:69A–29 to fix compensation of its employees. This statutory grant of authority is broad enough to include payment for unused sick leave in the form of additional compensation upon retirement.
>
> . . . .
>
> The Legislature in no place has withdrawn from a municipality the power to pay for unused sick leave. In the absence of express restriction against bargaining for that term of an employment contract between an employer and its employees, the authority to provide for such payment resides, in the municipality under the broad powers and duties delegated by the statutes. Were it otherwise a municipality would not be able to bargain collectively and to make agreements concerning terms of employment with its employees unless specific statutory authority for each provision of the agreement existed. Such a narrow and inflexible construction would virtually destroy the bargaining powers which public policy has installed in the field of public employment and throttle the ability of a municipality to meet the changing needs of employer-employee relations ... Such a construction would undermine the laudable purposes of New Jersey Employer-Employee Relations Act, *N.J.S.A.* 34:13A–1 *et seq.* [at 562–63.]

In *Plumbers and Steamfitters v. Woodbridge Bd. of Ed.*, 159 *N.J.Super.* 83 (App.Div.1978), the court said:

The right of public employees to negotiate the terms and conditions of their employment is now an accepted public policy. *N.J.S.A.* 34:13A–5.3. The right of employees to bargain for extra-statutory rights has received judicial recognition. [at 87]

It follows that the health and welfare fund is a lawful substitute for the payment of direct compensation. The fact that payments are to be made directly and not follow a circuitous route from the city, to the employees, to the fund, presents no problem. The employees are doing no more than making an assignment of their wages to the fund after the wages have been earned. Such an assignment is proper. *See* 4 *McQuillen, Municipal Corporations,* § 192 at 73; *Nadal v. New York,* 150 *Misc.* 400, 269 *N.Y.S.* 379 (City Ct. of N.Y.1934). Plaintiff is therefore entitled to a judgment declaring that the contract with the city is valid and enforceable.