DANMARK, INC., A CORPORATION OF THE STATE OF NEW JERSEY/T/A BARRETT COUNTRY CLUB ESTATES, PLAINTIFF, v. TOWNSHIP OF SOUTH BRUNSWICK, RENT LEVELING BOARD OF THE TOWNSHIP OF SOUTH BRUNSWICK: AND ELEANOR JOHNSON, DEFENDANTS, AND BARRETT GARDENS TENANTS ASSOCIATION, INTERVENOR-DEFENDANT.

Superior Court of New Jersey
Law Division Middlesex County

Decided March 2, 1982.

480

---

*James Convery* for plaintiff (*Convery & Convery,* attorneys).

*Edward L. Picone* for defendant Township of South Brunswick (*Picone & Geller,* attorneys).

*Mark L. Antin* for defendant South Brunswick Rent Leveling Board (*Gennett & Kallmann,* attorneys).

*John V. McGuigan* for defendant Eleanor Johnson and intervenor-defendant Barrett Gardens Tenants Association (*Barry C. Brechman,* attorney).

SKILLMAN, J. S. C.

This prerogative writ action is a sequel to *Orange Taxpayers' Council, Inc. v. Orange,* 83 *N.J.* 246 (1980). In that case the court upheld the validity of a municipal rent control ordinance which required, as a precondition to approval of a rent increase, that a landlord obtain a certification that a multiple dwelling is in "substantial compliance" with municipal housing regulations. The court held that the maintenance of housing which complies with municipal housing regulations bears a proper relationship to the purpose of rent control, which is to enable a municipality's residents to "obtain decent housing within their means." *Id.* at 257.

The rent control ordinance of South Brunswick Township challenged in this case seeks the same basic objective—the maintenance of decent housing for municipal residents—and employs the same general mechanism to achieve that objective— the denial of the full amount of rent a landlord otherwise would be permitted to charge. However, the operation of the South Brunswick ordinance differs from the Orange ordinance in several significant respects. Whereas the Orange ordinance required a one-time certification of compliance with municipal housing regulations before a rent increase could become effective, the South Brunswick ordinance authorizes a rent reduction at any time during the term of a lease if a housing deficiency is found to exist. Furthermore, whereas the determination of compliance with municipal housing regulations required by the Orange ordinance related to an entire building, a rent reduction may be sought under the South Brunswick ordinance by any tenant of an individual unit in which there is an alleged deficiency. Lastly, whereas the Orange ordinance imposed upon the municipal housing department a responsibility to determine whether any housing deficiency exists, the South Brunswick ordinance imposes that responsibility upon the Rent Leveling Board itself. In short, the primary feature of the South Brunswick ordinance distinguishing it from the ordinance upheld in the *Orange Taxpayers' Council* case is that it confers *quasi-*

judicial decision-making authority upon the Rent Leveling Board to adjudicate allegations of individual housing violations.

Plaintiff Danmark, Inc. is the owner of a garden apartment complex known as Barrett Country Club Estates, located in South Brunswick. One of its tenants, defendant Eleanor Johnson, applied for a rent reduction pursuant to the challenged South Brunswick ordinance. The South Brunswick Rent Leveling Board determined after a hearing that there were several housing deficiencies in Johnson's apartment and ordered her rent to be reduced by 5% until those deficiencies were corrected. This prerogative writ action was then initiated. While the complaint is directed in part at the action taken by the Rent Leveling Board on Johnson's individual rent reduction application, the primary thrust of the action has been a broadside attack upon the validity of the South Brunswick ordinance. Recognizing that the primary purpose of the action is to invalidate the South Brunswick rent reduction ordinance, the Barrett Gardens Tenants Association, representing a majority of tenants in the plaintiff's garden apartment complex, applied for and was granted leave to intervene as a defendant.

I

The principal challenge to the South Brunswick ordinance arises from the fact that it confers *quasi*-judicial decision-making authority upon the Rent Leveling Board to determine the existence of housing deficiencies in individual building units. Plaintiff contends that the adjudication of such claims by a rent leveling board would intrude upon, and hence is preempted by, the jurisdiction conferred by the Legislature upon county district courts to hear disputes concerning the habitability of residential premises. This issue was not raised in the *Orange Taxpayers' Council* case, probably because the Orange ordinance made approval of a rent increase contingent upon compliance with housing regulations of a whole building rather than individual dwelling units, and such compliance was determined by

certification of a housing official rather than through *quasi-judicial* proceedings before the Rent Leveling Board.

The statutory provisions upon which plaintiff relies in contending that the South Brunswick ordinance has been preempted are *N.J.S.A.* 2A:42–85 *et seq.*[1] These provisions authorize a tenant to bring a judicial action based upon an alleged lack of habitability of a rental unit. *N.J.S.A.* 2A:42–88. If such a claim is upheld, the court may authorize a tenant or group of tenants to deposit rent monies with the court to be used in correcting the condition of uninhabitability. *N.J.S.A.* 2A:42–92.

The basic approach employed in determining whether municipal ordinances are preempted by state legislation was concisely summarized by former Chief Justice Weintraub in *Summer v. Teaneck*, 53 *N.J.* 548 (1969):

> A municipality may not contradict a policy the Legislature establishes... Hence an ordinance will fall if it permits what a statute expressly forbids or forbids what a statute expressly authorizes. Even absent such evident conflict, a municipality may be unable to exercise a power it would otherwise have if the Legislature has preempted the field... But an intent to occupy the field must appear clearly... It is not enough that the Legislature has legislated upon the subject, for the question is whether the Legislature intended its action to preclude the exercise of the delegated police power... The ultimate question is whether, upon a survey of all the interests involved in the subject, it can be said with confidence that the Legislature intended to immobilize the municipalities from dealing with local aspects otherwise within their power to act. [at 554–555]

In *Overlook Terrace Management Corp. v. West New York Rent Control Bd.*, 71 *N.J.* 451 (1976), the court identified a number of factors to be considered in determining whether the Legislature intended to preclude local initiatives in an area:

> 1. Does the ordinance conflict with state law, either because of conflicting policies or operational effect (that is, does the ordinance forbid what the Legislature has permitted or does the ordinance permit what the Legislature has forbidden?)

---

[1] Plaintiff also points to *N.J.S.A.* 2A:18–61.1. However, this enactment does not specifically refer to lack of habitability. Rather, the availability of a habitability defense to a summary dispossess action had its origin in case law. See *Marini v. Ireland*, 56 *N.J.* 130 (1970).

2. Was the state law intended, expressly or impliedly, to be exclusive in the field?

3. Does the subject matter reflect a need for uniformity?

4. Is the state scheme so pervasive or comprehensive that it precludes coexistence of municipal regulation?

5. Does the ordinance stand "as an obstacle to the accomplishment and execution of the full purpose and objectives" of the Legislature? [at 461–462]

Judged by these criteria, it cannot be said that the Legislature, by conferring jurisdiction upon county district courts to hear habitability disputes, intended to foreclose municipal officials from taking housing conditions into consideration in administering a system of rent control. The statutes which confer such jurisdiction upon county district courts contain no express prohibition against municipal action to assure that the quality of rental housing is maintained. Furthermore, there is no conflict between the statute conferring jurisdiction upon county district courts and the South Brunswick ordinance. On the contrary, plaintiff claims that there is a duplication between the state statute and the ordinance because South Brunswick has authorized its Rent Leveling Board to hear disputes over which the Legislature has conferred jurisdiction upon the county district courts. However, the mere existence of an overlap in jurisdiction should not be viewed as revealing a legislative intent to foreclose municipal activity to preserve the quality of rental housing. Concurrent jurisdiction in different forums to hear disputes involving the same or related subject matter is not uncommon today, and there is no reason to infer a legislative intent to preclude the assertion of concurrent jurisdiction. *See, e.g., Lally v. Copygraphics,* 173 *N.J.Super.* 162 (App.Div.1980), aff'd 85 *N.J.* 668 (1981), which found an implied private cause of action in the courts for retaliatory discrimination against an employee for filing a workers' compensation claim even though the governing legislation expressly authorizes proceedings before a state administrative agency.

Furthermore, the interests sought to be protected and the remedies available under the South Brunswick rent leveling ordinance are not identical to those in a habitability action in

county district court. In order to establish a claim in a habitability action in county district court, a tenant must show "a lack of heat or of running water, or of light or of electricity or of adequate sewage disposal facilities. . ." or some other condition which would have an immediate effect upon health, safety or the fitness of premises for human habitation. *N.J.S.A.* 2A:42–88. If such a claim is established, the remedy is the use of the rental money to correct the condition causing the habitability problem. *N.J.S.A.* 2A:42–92. The South Brunswick ordinance sets forth a more expansive definition of the housing deficiencies which will justify a claim, namely, any failure by the landlord to "maintain the same standards of service, maintenance, furniture, furnishings or equipment in the rental premises, as he provided or was required to do by law or lease at the date the lease was entered into." [2] If there is such a deficiency, it must be corrected by the landlord, and until the correction is made the rent which must be paid by the tenant is reduced to an amount which the Rent Leveling Board determines is "the reasonable rental value of the unit in view of the deficiency." Thus, both the types of housing deficiencies on which a claim can be based and the remedies available are more expansive under the South Brunswick rent leveling ordinance than under the statute conferring jurisdiction upon county district courts to hear habitability disputes.

---

[2]Thus, the South Brunswick ordinance authorizes a rent reduction for a housing deficiency which would not be serious enough to support a habitability claim. However, in the actual administration of the ordinance the South Brunswick Rent Leveling Board apparently has been ordering rent reductions only if housing deficiencies are serious enough in the view of the Board to affect habitability. However, the ordinance by its terms is not thus limited and there is no requirement in statutory or case law which would preclude the Board from ordering rent reductions for housing deficiencies which do not affect habitability. Indeed, there is some doubt whether the deficiencies found in this case actually affect habitability. On the other hand, the Board has the discretionary authority in administering the ordinance to deny an application for a rent reduction if a housing deficiency is of a minor nature.

These differences reflect the fact that the South Brunswick ordinance is addressed to somewhat different regulatory concerns than the habitability statute. The habitability statute is designed to ensure that New Jersey residents who occupy rental premises receive housing that contains certain essentials, such as heat, running water and adequate sewage disposal. The South Brunswick ordinance is designed not only to serve this objective but also to ensure that a tenant continues during the entire term of a lease to be provided with the same quality of leased premises as was provided at the beginning of the tenancy.

Plaintiff contends that the allowance of a rent reduction for a housing deficiency which does not affect habitability would conflict with state policy as expressed in the habitability statute. In other words, plaintiff reads the habitability statute as not only affirmatively conferring authority upon county district courts to hear one type of housing claim but as also implicitly barring other types of housing claims which may be more expansive in scope. However, the habitability statute does not establish a comprehensive state regulatory scheme which reasonably can be construed to preclude supplementary municipal action. *Cf. Overlook Terrace Management Corp. v. West New York Rent Control Bd., supra.* It simply confers authority upon county district courts to hear a particular type of dispute. Furthermore, the habitability statute establishes a remedy—payment of rents into court and the use of that money to abate a housing deficiency—which may not have been available previously. However, it does not purport to prohibit or to supersede other causes of action available to tenants, such as a claim for breach of a lease agreement. *See Berzito v. Gambino,* 63 *N.J.* 460, 472–473 (1973). Therefore, it cannot be read to deal comprehensively with the subject and hence to foreclose other types of claims for housing deficiencies either in the courts or in other forums such as rent leveling boards.

The conclusion that the habitability statute does not foreclose municipal action relating to housing deficiencies is also sup-

ported by the decision in *Dome Realty, Inc. v. Paterson,* 83 *N.J.* 212 (1980), which held that municipalities may adopt remedial measures to prevent violations of municipal housing codes despite state legislation conferring broad authority upon the Department of Community Affairs to enforce housing regulations. The court in *Dome* concluded that there was a legislative intent to encourage rather than to foreclose supplementary municipal initiatives to maintain the quality of housing. *See, also, Inganamort v. Fort Lee,* 62 *N.J.* 521, 537–538 (1973); *Apartment House Council v. Ridgefield,* 123 *N.J.Super.* 87, 92–93 (Law Div.1973), aff'd 128 *N.J.Super.* 192 (App.Div.1974); *N.J.S.A.* 2A:42–84. Similarly, although no preemption contention was advanced in *Orange Taxpayers' Council, Inc. v. Orange, supra,* the conclusion there reached, that a municipality may condition approval of a rent increase upon receipt of a certificate from a municipal housing official that premises are in substantial compliance with municipal housing regulations, provides strong inferential support for this court's conclusion that the Legislature has not preempted municipal agencies from adjudicating claims of housing deficiencies.

## II

Plaintiff also claims that the challenged sections of the South Brunswick ordinance are unconstitutional. Specifically, it contends that the ordinance requires compliance with housing standards which are "unreasonably vague, unworkable, and impossible to comply with" and is therefore arbitrary and capricious. It also contends that the rent reduction remedy authorized by the ordinance denies a landlord a just and reasonable return upon his investment and is therefore confiscatory.

It is now well established that rent control ordinances which deny a landlord a just and reasonable return on his investment or which are arbitrary, capricious or unreasonable are unconstitutional and will be invalidated. *Hutton Pk. Gardens v. West Orange,* 68 *N.J.* 543, 565 (1975); *Brunetti v. New*

*Milford,* 68 *N.J.* 576, 599–600 (1975). However, a rent control ordinance, like other statutory enactments, is presumed to be constitutional and a heavy burden is placed on a party who challenges its validity. *Hutton Pk. Gardens v. West Orange, supra,* 68 *N.J.* at 570–573.

Plaintiff's claim that the ordinance is arbitrary and capricious is based primarily upon the definition of those housing deficiencies which will justify a rent reduction. The ordinance requires a landlord to "maintain the same standards of service, maintenance, furniture, furnishings or equipment ... as he provided or was required to do by law or lease at the date the lease was entered into," or else be subject to a rent reduction. The type of housing deficiencies which would violate this standard are undoubtedly very broad; certainly, the standard encompasses more than merely claims of uninhabitability. However, this does not mean it is arbitrary and capricious. On the contrary, the ordinance is reasonably designed to serve the same objective as rent control. The most common occasion for the adoption of rent control is the existence of a housing shortage which places landlords in a position where they can take unfair advantage of tenants. *Hutton Pk. Gardens v. West Orange, supra,* 68 *N.J.* at 564. Rent controls seek to prevent excessive rents which landlords otherwise might be in a position to impose. However, the imposition of excessive rents is not the only means by which a landlord may take advantage of a housing shortage. A failure to provide normal apartment maintenance, even if deficiencies do not affect the habitability of the premises, is another means by which a landlord may exploit tenants when the conditions of the housing rental market do not provide a realistic opportunity to seek alternate housing. This is the concern which the South Brunswick ordinance addresses. It simply requires a landlord to continue providing that level of service which has been provided theretofore or which the lease or some provision of law requires to be provided. This requirement is easily understood, closely related to the objectives of rent control and eminently fair. As observed by the Appellate

Division in *Orange Taxpayers' Council, Inc. v. Orange*, 169
*N.J.Super.* 288 (App.Div.1979), aff'd 83 *N.J.* 246 (1980):

> Rent control would be self-defeating were landlords permitted to reduce mainte-
> nance expenditures and allow buildings to deteriorate because their profits have
> been regulated downward. [at 303]

█ Plaintiff's claim that the South Brunswick ordinance may
deprive a landlord of a just and reasonable return on his
investment and therefore is confiscatory, is plainly lacking in
substance. Initially, it should be noted that even when a
violation of the ordinance is found to have occurred, the landlord
may still collect "the reasonable rental value of the unit or units
in view of the deficiency." Plaintiff fails to explain how pay-
ment of "the reasonable rental value of the unit" would fail to
afford the landlord a just and reasonable return on its invest-
ment. Furthermore, if a landlord wishes to resume receipt of
the full amount of rents, it is fully within its power to do so
simply by correcting the housing deficiency. In any event,
plaintiff's confiscation claim appears to be foreclosed by the
decision of the Supreme Court of New Jersey in *Brunetti v. New
Milford, supra*, 68 *N.J.* at 595–597 (1975), in which a similar
challenge to a nearly identical provision in the New Milford rent
control ordinance was rejected.

### III

█ Plaintiff also claims that the action taken by the Rent
Leveling Board in this particular case was arbitrary and capri-
cious because its decision does not contain adequate findings of
fact.[3] A rent leveling board has the same obligation as any

---

[3]Plaintiff also urged in its brief that Johnson was foreclosed from applying
for a rent reduction by principles of waiver, estoppel and the single controver-
sy doctrine, because she had failed to raise the alleged deficiencies in her
apartment as a defense in an earlier dispossess action brought by plaintiff and
had failed to oppose plaintiff's two recent applications for rent increases on
this basis. However, it was revealed at oral argument that Johnson had not
been a party to the dispossess action and accordingly plaintiff abandoned its
single controversy doctrine argument. The claim that the deficiencies in

other agency with *quasi*-judicial decision making authority to set forth basic findings of fact as well as to explain the process of reasoning by which those findings lead to its ultimate conclusions. *In re Howard Savings Institution of Newark Application*, 32 *N.J.* 29, 52 (1960).

In the present case the Board specifically found seven housing deficiencies in defendant Johnson's apartment: "(1) no screen in large bathroom window; (2) no exhaust fan in smaller bathroom (no other ventilation in bathroom); (3) one of two bedroom windows inoperable; (4) ceiling and wall plaster cracked and falling as a result of corrected water leak; (5) dangerous condition of concrete walkway leading to tenant's apartment; and, (6) inadequate lighting in parking areas and other public areas used by the tenant in and around the premises; (7) no smoke detectors, as required by law." In addition, individual members of the Board expressed the view, apparently adopted by the Board as a whole, that most of the deficiencies had existed for a substantial period of time. These findings are all supported by substantial credible evidence in the record and provide an adequate factual foundation for ordering a rent reduction and making that reduction retroactive.

However, the decision of the Rent Leveling Board is inadequate in two respects. There are no findings of fact or reasoned explanation for the Board's decision to impose a rent reduction of 5%. The Board simply stated that it had arrived at this figure "by considering the reasonable expectations of the tenant in light of the amount of rent being paid, the nature of the housing, the extent to which the conditions affect the habitability of the premises, and for the other reasons set forth by the members of the Board." This statement of factors taken into

_____

Johnson's apartment should have been raised at the hearings on plaintiff's application for rent increases is plainly lacking in substance. There is no indication in the South Brunswick rent control ordinance that a housing deficiency in an individual apartment would be relevant in deciding whether a landlord is entitled to a rent increase.

account by the Board does not explain why the rent was reduced by 5% rather than 3%, 10% or some other figure. Nor does the Board's decision disclose why the full amount of this reduction was made retroactive to May 1, 1979, the date of commencement of Johnson's tenancy, when it is clear that some of the deficiencies did not arise until a later date.

Ordinarily, these inadequacies in the findings and reasoning of the Board would require a remand to the agency for more specific findings and conclusions. On the other hand, the total amount of money involved in this rent reduction is relatively small and this court recognizes that this action has been brought essentially as a test case to determine the validity of the South Brunswick ordinance. Therefore, the interests of all parties would be served by reaching a final determination rather than ordering a remand. Furthermore, the 5% rent reduction ordered by the Board does not appear to be seriously out of line with the actual loss of economic value of the rental premises to Johnson resulting from the deficiencies. Consequently, the 5% rent reduction ordered by the Board will be affirmed. However, in recognition of the fact that the Board's disposition fails to take into account that several of the deficiencies do not date back to the commencement of the tenancy and that a 5% rent reduction for the entire term of the lease is to this extent arbitrary and capricious, the amount of that reduction will be reduced to 2% for the period preceding the date of filing of the rent reduction application. Furthermore, the Board should be mindful in future cases of its obligation to state with specificity its reasons for ordering a particular rent reduction.

Accordingly, judgment will be entered declaring the challenged South Brunswick ordinance to be valid in all respects and denying all relief sought by the complaint, except that the final decision of the South Brunswick Rent Leveling Board on the rent reduction application of defendant Johnson will be modified to reduce the amount of retroactive rent reduction from 5% to 2%.