215 N.J. Super. 1 (1986)
520 A.2d 1150
HARRISON ASSOCIATES, A NEW JERSEY PARTNERSHIP, PLAINTIFF-APPELLANT,
v.
THE RENT LEVELING BOARD OF THE TOWNSHIP OF FRANKLIN, SOMERSET COUNTY, AND JEFF STARBUCK AND JILL STEIN, DEFENDANTS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Submitted November 26, 1986.
Decided December 29, 1986.
*2 Before Judges KING, DEIGHAN and HAVEY.
Harrison & Schlossberg, attorneys for appellant (Harlan L. Schlossberg and Michael Harrison of counsel; Harlan L. Schlossberg on the brief).
*3 Joseph Fisch, attorney for respondent (Joseph Fisch on the brief).
The opinion of the court was delivered by HAVEY, J.A.D.
The issue raised by this appeal is whether a provision in a rent leveling ordinance requiring 60-days' notice of increase in rent is preempted by the Anti-Eviction Act, N.J.S.A. 2A:18-61.1 and -61.2, which provides for only one month's notice to quit and notice of rent increase as a condition precedent to an eviction proceeding. We hold that there is no preemption and therefore reject plaintiff's claim that the 60-days' notice provision under the Franklin Township Rent Leveling Ordinance is invalid. We affirm.
Plaintiff owns and operates a 20-story high-rise luxury apartment building in Franklin Township known as "Harrison Towers". Defendants Jeff Starbuck and Jill Stein have been tenants on an annual lease basis during the period relevant to this action. Their annual lease commences on the first day of November of each year.
Franklin Township has, since 1973, controlled rents in multi-family complexes by means of a rent leveling ordinance. The ordinance provides that notice of a rental increase must be served upon tenants at least 60-days prior to the effective date of the proposed increase. Prior to 1979, the ordinance provided for a 3 1/2% maximum rental increase per annum. In 1979, plaintiff challenged the ordinance and in 1980 a Law Division judge entered judgment in plaintiff's favor declaring the ordinance unconstitutional as it applied to plaintiff, and "enjoined" enforcement of the ordinance against it. The judgment was appealed.
During August 1981, plaintiff noticed Starbuck and Stein of its intention to increase their annual rent by 4.8% effective on the renewal date of their lease, November 1, 1981. The parties executed the lease at the end of August 1981. Effective *4 October 1, 1981, the ordinance was amended raising the permitted maximum annual rental increase from 3 1/2% to 6 1/2%.
In February 1982, in an unreported opinion, the Appellate Division reversed the judgment declaring the ordinance invalid as against plaintiff. As a consequence of the reversal, plaintiff recalculated the rents charged "during the injunction period" and made appropriate repayments to tenants of the difference between what was collected and the 3 1/2% to which it was entitled. However, in calculating the repayment, it applied the 6 1/2% increase to the November 1, 1981 renewal.
In 1985 Starbuck and Stein filed a complaint with the rent leveling board alleging that plaintiff had violated the 3 1/2% increase provision of the ordinance for rents collected for the November 1, 1981-1982 lease term. The board agreed, concluding that when plaintiff gave notice of the increase and signed the lease in August, it was bound by the 3 1/2% pre-amendment cap under the ordinance. It ordered plaintiff to adjust the base rent for the lease years commencing November 1, 1981 through 1984 and to refund overpayments made during that period. The trial judge affirmed the board's determination.
Plaintiff first argues that since the November 1, 1981 lease renewal was subsequent to the October 1, 1981 ordinance amendment, it should derive the benefit of the 6 1/2% increase in calculating the rebate for the renewal year. We reject the argument since the effect of the Appellate Division decision was to reinstate the ordinance retroactively and to restore the parties to their status prior to the suit being instituted. See Landy v. Lesavoy, 20 N.J. 170, 176 (1955). Consequently, plaintiff was subject to the 3 1/2% rate when it gave notice of an increase and signed the lease in August 1981. Thus plaintiff was obligated when it calculated the repayments for the November 1, 1981 lease term to apply the 3 1/2% rate which was in effect when the lease was executed.
Plaintiff next contends that the Anti-Eviction Act, which requires only one month's notice of rental increases; preempts *5 the field, and therefore Franklin Township's 60-days' notice requirement is invalid. As we understand plaintiff's argument, had there had been no "injunction" in August 1981, it would have waited until October 1, 1981, given the statutory one-month notice and availed itself of the 6 1/2% rate under the ordinance amendment.
Preemption is based on the proposition that a municipality may not contradict a policy the Legislature establishes. Overlook Ter. Manage. v. Rent Control Bd. of W. New York, 71 N.J. 451, 461 (1976); Summer v. Teaneck, 53 N.J. 548, 554 (1969). In deciding whether the principle of preemption applies, the threshold question is whether the subject matter regulated by the local ordinance is the same as that regulated by the State. Overlook Ter. Manage. v. Rent Control Bd. of W. New York, supra, 71 N.J. at 461. If the subject matter or field is the same, the following considerations are relevant to the preemption issue:
1. Does the ordinance conflict with state law, either because of conflicting policies or operational effect, that is, does the ordinance forbid what the Legislature has permitted?
2. Was the state law intended expressly or impliedly to be exclusive in the field?
3. Does the subject matter reflect a need for uniformity?
4. Is the state scheme so pervasive or comprehensive that it precludes coexistence of municipal regulation?
5. Does the ordinance stand as an obstacle to the accomplishment and execution of the full purposes and objectives of the Legislature?
State v. Crawley, 90 N.J. 241, 248 (1982), quoting Overlook Ter. Manage. v. Rent Control Bd. of W. New York, supra, 71 N.J. at 461-462.
There is little doubt that the field in which both the Franklin Township Ordinance and the Anti-Eviction Act operate is the same: regulation and control of rental increases. However, the similarity ends there.
The 60-day notice under Franklin Township's Ordinance is part of a regulatory scheme controlling rental increases in *6 multi-family complexes. The power of a municipality to control rents is, of course, no longer open to question. Orange Tax-payers Council, Inc. v. Orange, 83 N.J. 246, 254 (1980); Helmsley v. Borough of Fort Lee, 78 N.J. 200, 209 (1978), appeal dis. 440 U.S. 978, 99 S.Ct. 1782, 60 L.Ed.2d 237 (1979). The shortage of housing and potential for landlord exploitation permits local government "... to devise measures tailored to the local scene." Inganamort, et al. v. Bor. of Fort Lee, et al., 62 N.J. 521, 528 (1973). "[P]ractical considerations may warrant different or more detailed local treatment to meet varying conditions or to achieve the ultimate goal more effectively." Ibid.
Any rent control regulation must permit property owners to apply to the local administrative agency for relief if the regulation, as applied, is confiscatory. Hutton Pk. Gardens v. West Orange Town Council, 68 N.J. 543, 575, n. 10 (1975). The inquiry in deciding whether the ordinance meets minimal constitutional standards is whether the regulatory scheme when examined in its entirety permits a just and reasonable return on investment to an efficient landlord. Mayes v. Jackson Tp. Rent Leveling Bd., 103 N.J. 362, 367 (1986); Helmsley v. Borough of Fort Lee, supra, 78 N.J. at 210. In most cases, as here, the governing body bestows upon the local regulatory agency exclusive power to hear and decide issues relating to rental increases and rebates. Glynn v. Park Tower Apartments, Inc., et al., 213 N.J. Super. 357, 362 (App.Div. 1986).
The Anti-Eviction Act, N.J.S.A. 2A:18-61.1 and 2A:18-61.2 has an entirely different purpose. It prohibits the eviction of tenants except for specifically enumerated grounds. N.J.S.A. 2A:18-61.1f permits eviction if:
The [tenant] has failed to pay rent after a valid notice to quit and notice of increase of said rent, provided the increase in rent is not unconscionable and complies with any and all other laws or municipal ordinances governing rent increases[.]
*7 N.J.S.A. 2A:18-61.2e provides that the notice to quit and notice of increase must be served one month prior to the institution of an action to evict.
The purpose of the Anti-Eviction Act is set forth in the statement appended to Assembly Bill 1586, enacted as L. 1974 c. 49, and codified as N.J.S.A. 2A:18-61.1:
At present, there are no limitations imposed by statute upon the reasons a landlord may utilize to evict a tenant. As a result, residential tenants frequently have been unfairly and arbitrarily ousted from housing quarters in which they have been comfortable and where they have not caused any problems. This is a serious matter, particularly now that there is a critical shortage of rental housing space in New Jersey. This act shall limit the eviction of tenants by landlords to reasonable grounds and provide that suitable notice shall be given to tenants when an action for eviction is instituted by the landlord.
See Morristown Mem. Hosp. v. Wokem Mtge. & Realty, 192 N.J. Super. 182, 186 (App.Div. 1983).
Thus the Legislature pronounced its intent to limit eviction of tenants to reasonable grounds and upon suitable notice. 534 Hawthorne Ave. Corp. v. Barnes, 204 N.J. Super. 144, 148 (App.Div. 1985). Consequently, tenants are protected from arbitrary, unilateral changes in their tenancy imposed by landlords. See Harry's Village, Inc. v. Egg Harbor Tp., 89 N.J. 576, 584 (1982). In the case of a rental increase, the aim is to allow tenants a reasonable time to either accept the increase or to find alternative housing.
There is no conflict between Franklin Township's Ordinance and State law. The very language of N.J.S.A. 2A:18-61.1, requiring proposed rental increases to comply "... with any all other laws or municipal ordinances governing rent increases[,]" envisions that both State and local regulatory schemes may co-exist. It is true that with the enactment of the Anti-Eviction Act, the Legislature intended to foreclose local control of the grounds for eviction of a tenant. See Brunetti v. Borough of New Milford, 68 N.J. 576, 603 (1975). But establishing reasonable notice procedures regulating the increase in rents is another matter.
*8 The 60-days' notice requirement under the Franklin Township Ordinance simply informs the tenant that the landlord will be seeking an increase. See Harry's Village, Inc., v. Egg Harbor Tp., supra, 89 N.J. at 585. The notice obviously is not intended, nor can it, supplant the statutory prerequisites to an eviction proceeding. It is simply part of an automatic rent-increase mechanism intended to afford landlords a fair and reasonable rate of return on their investment. It provides the local board with an efficient method of administering the ordinance and overseeing the increases without the need for public hearings. A state-wide, uniform notice period would no doubt be unworkable, since notice requirements must be "... tailored to the local scene", based on the number of units regulated and the complexity of the rent control procedure in question. Inganamort, et al. v. Bor. of Fort Lee, et al., supra, 62 N.J. at 528.
Of course, if the local ordinance called for a notice period of less than one month, the ordinance would contradict and undermine the legislative purpose of N.J.S.A. 2A:18-61.1. See Harry's Village, Inc. v. Egg Harbor Tp., supra 89 N.J. at 585. But when the notice period exceeds one month, as here, the legislative policy is advanced, not undermined, since the tenant is given a longer period to consider the proposed increase and to find alternative housing. We cannot conceive that the Legislature intended to foreclose a local board from affording tenants such a right. We are satisfied that the 60-days' notice provision under the Franklin Township Ordinance is not preempted by State law, and is therefore valid.
Calculating the 60-days' notice requirement from October 1, 1981, it is clear that only tenants whose renewal date was effective on and after December 1, 1981, were subject to the 6 1/2% increase. Accordingly, the board properly found the plaintiff had violated the ordinance.
The judgment is affirmed.