645 A.2d 175

STATE OF NEW JERSEY (CITY OF PATERSON), PLAINTIFF
v. HARBI KHATER, DEFENDANT.

Superior Court of New Jersey
Law Division Criminal Part
Passaic County

February 1, 1994.

*Robert Brigliadoro,* Second Assistant Corporation Counsel, for plaintiff (*Susan E. Champion,* Corporation Counsel, City of Paterson—Department of Law, attorney).

*Dante P. Mongiardo,* Senior Assistant Prosecutor, appearing as Intervenor, for plaintiff (*Ronald S. Fava,* Passaic County Prosecutor, attorney).

*Fred A. Iannaccone,* for defendant.

*Robert G. Rosenberg,* for defendant.

## *OPINION*

ROTHENBERG, J.S.C.

This municipal appeal comes before this court pursuant to *R.* 3:23. The defendant appeals his conviction under Paterson Municipal Ordinance *RGOP* § 4–2, which requires the licensure of all mechanical amusement devices (except for those listed in *RGOP* § 4–1.1) used in public, quasi-public or private club settings. The limited issue on appeal is whether the municipal ordinance that the defendant allegedly violated, *RGOP* § 4–1, is a valid and reasonable exercise of the City of Paterson's police power in order

to protect and regulate the health, safety, and welfare of its citizens.[1]

The arguments of counsel, the briefs submitted by all the parties, and the transcript of the proceeding below indicate that the defendant was charged and convicted of a violation of *RGOP* § 4-2. The municipal court trial demonstrated that the defendant maintained three "Keno" machines on his business premises without the proper license required by *RGOP* § 4-2.[2] However, the

---

[1] This municipal appeal is a companion case to *State v. Mario Capalbo*, M.A. # 3388 which has also been decided today by this Court. That municipal appeal has determined that the Judge of the Paterson Municipal Court improperly dismissed the complaints against the defendants that alleged violations of the City of Paterson's mechanical amusement device ordinance, *RGOP* § 4-1.

[2] The ordinance mandates that all mechanical amusement devices must be licensed by the City of Paterson.

*RGOP* § 4-2 states that:

No person shall operate, maintain or use in any public or quasi public place, club, private club, social club, fraternal organization, or in any building, store or other place where the public is invited or wherein the public may enter any mechanical amusement device as defined in Section 4-1 without first having obtained a license for each such device as hereinafter provided. Subject to the provisions of Chapter 4, Article III, Section 4-27 through 41, a separate license shall be required for any device capable of being played independently with any other device whether or not one or more such device is encased in one enclosure.

A mechanical amusement device is defined in *RGOP* § 4-1 as:

the type of machine, electronic game or contrivance commonly known and designated as bagatelle, baseball, hockey, football, pool table, gun, shuffle alley, bowling, pinball or pin amusement game, video game, arcade game or computer game or machine or device similar to the foregoing, which, upon the insertion of a coin, paper money, slug or token in any slot or receptacle attached to said machine or device or connected therewith, or which by remote control, mechanical or manual means, with or without payment of a fee, operates or which may be operated for use as a game, contest or amusement in a public or quasi public place, private club, social club, fraternal organization, or in any building, store, or other place wherein the public is invited, or wherein the public may enter and which provides neither prizes nor the return of any money.

However, it has been conceded by all parties that the types of machines maintained by the defendant were prohibited from licensure by *RGOP* § 4-1.1. This section states that:

types of mechanical amusement devices maintained by the defendant were prohibited from licensure pursuant to *RGOP* § 4–1.1.

No license shall be granted for any mechanical amusement device which is to be used for the purpose of gambling. For the purpose of this ordinance a mechanical amusement device, the operation of which is based in any part on random chance or the random assignment of numbers and the operation of which does not require more than minimum skill or hand-eye coordination, shall be presumed to be intended to be utilized for gambling purposes. By way of clarification but not limitation, mechanical amusement devices used for the purpose of gambling shall be deemed to include the following:
(a) Mechanical amusement devices known as Joker Poker, or any similar mechanical amusement devices displaying playing cards; keno or any similar mechanical amusement devices displaying a number board where numbers are designated by random; Horse Racing; Roulette; Dice; Luckylines, Cherry Master or any similar mechanical amusement devices styled after a slot machine with a rolling display or circular wheel on which are depicted symbols; lotto or lottery type machines, or
(b) Any mechanical amusement device the operation of which is based in any part on random chance or the random assignment of numbers and the generation of which does not require more than minimal skill or hand-eye coordination and which does not have an operable slot or receptacle for the insertion of coin or paper money; this section shall not be deemed to prohibit devices provided at no charge by restaurants or retail establishments for the amusement of their patrons, or
(c) Any mechanical amusement device the operation of which is based in any part on random chance or the random assignment of numbers and the generation of which does not require more than minimal skill or hand-eye coordination and with buttons or controls labeled "double up" or "bet", or buttons or controls performing said function regardless of label, or
(d) Any mechanical amusement device the operation of which is based in any part on random chance or the random assignment of numbers and the generation of which does not require more than minimal skill or hand-eye coordination and which can be controlled or operated from a remote location by other than the individual player, or
(e) Any mechanical amusement device the operation of which is based in any part on random chance or the random assignment of numbers and the generation of which does not require more than minimal skill or hand-eye coordination and which is readily capable of being converted by the internal technology of the mechanical amusement device to machines such as set forth in paragraph (a) above.
    For the purposes of this prohibition, mechanical amusement devices commonly known as pinball machines, regardless of the nature of any visual display thereon, shall be deemed to require more than minimal skill or hand-eye coordination and thus are not subject to this prohibition against licensing.

Under the ordinance, it is presumed that the types of machines the defendant maintained on his premises were to be utilized for gambling purposes.[3] Thus, under the ordinance, the City will not license mechanical amusement devices whose sole purpose is to promote and/or facilitate gambling. However, the defendant now avers that *RGOP* § 4-1 is preempted by *N.J.S.A.* 2C:37-1-9, the state legislative scheme to regulate and criminalize gambling.[4]

---

[3] *See supra* note 2 and accompanying text.

[4] More particularly, the defendant argues that the Paterson ordinance is preempted by *N.J.S.A.* 2C:37-7, a statute criminalizing the *possession* of a gambling device. The statute declares that:

> A person except a player is guilty of possession of a gambling device when, with knowledge of the character thereof, he manufactures, sells, transports, places or possesses, or conducts or negotiates any transaction affecting or designed to affect ownership, custody or use of
>
> a. a slot machine; or
> b. any other gambling device, believing that the same is to be used in the advancement of unlawful gambling activity.
>
> Possession of a gambling device other than under such circumstances as would constitute a violation of section 116 of the "Casino Control Act" (P.L.1877, c. 110; C. 5:12-1 et seq.) is a disorderly persons offense; provided, however, that possession of not more than one gambling device other than a slot machine for social use within the home shall not be an offense under this section; and provided further, however that possession of one or more antique slot machines shall not be an offense under this section or under section 116 of the "Casino Control Act" (P.L.1977, c. 110; C. 5:12-1 et seq.). As used in this section, "antique slot machine" means a slot machine which was manufactured prior to 1941. Nothing herein contained shall be construed to authorize the use of an antique slot machine for any unlawful purpose or for gaming.

*N.J.S.A.* 2C:37-1 defines key terms utilized in the above statute. It states that:

> c. "Player" means a person who engages in any form of gambling solely as a contestant or bettor, without receiving or becoming entitled to receive any profit therefrom other than personal gambling winnings, and without otherwise rendering any material assistance to the establishment, conduct or operation of the particular gambling activity. A person who gambles at a social game of chance on equal terms with the other participants therein does not thereby render material assistance to the establishment, conduct or operation of such game if he performs, without fee or remuneration, acts directed toward the arrangement or facilitation of the game, such as inviting persons to play, permitting the use of premises therefor or supplying cards

The history behind this ordinance warrants mention. The record before this court indicates that on January 21, 1992, the Paterson City Council amended the City's ordinance that regulated and licensed mechanical amusement devices. The City Council, before enacting these amendments, heard testimony from various sources, including the Passaic County Prosecutor's Office, the Paterson Division of Public Safety, and various city residents, which indicated that certain amusement devices had the sole purpose of promoting and encouraging gambling. Thus, in furtherance of the city's police power, these amendments were enacted to prevent the licensure of devices presumed to be used exclusively for gambling purposes.[5]

However, the amendments to the mechanical amusement device ordinance fostered litigation challenging the validity and the constitutionality of the amendments.[6] This court is now called upon

---

or other equipment used therein. A person who engages in "bookmaking," as defined in this section is not a "player."

e. "Gambling device" means any device, machine, paraphernalia or equipment which is used or usable in the playing phases of any gambling activity, whether such activity consists of gambling between persons or gambling by a person involving the playing of a machine. Notwithstanding the foregoing, lottery tickets, policy slips and other items used in the playing phases of lottery and policy schemes are not gambling devices.

f. "Slot machine" means any mechanical, electrical or other device, contrivance or machine which, upon insertion of a coin, token or similar object therein, or upon payment of any consideration whatsoever, is available to play or operate, the play or operation of which, whether by reason of the skill of the operator or application of the element of chance, or both, may deliver or entitle the person playing or operating the machine to receive cash or tokens to be exchanged for cash, whether the payoff is made automatically from the machine or in any other manner whatsoever. A device so constructed, or readily adaptable or convertible to such use, is no less a slot machine because it is not in working order or because some mechanical act of manipulation or repair is required to accomplish its adaptation, conversion or workability.

[5] See supra note 2 and accompanying text.

[6] See e.g. Family Amusements, Co. v. City of Paterson, Docket Nos. PAS–L–2217–92 P.W.; PAS–L–2834–92 P.W. (Law Div. May 12, 1992) (ordinance, as

to again determine whether the amended ordinance is preempted by state law. More particularly, it is to decide whether the defendant's conviction thereunder was permissible.

■ It is undisputed that municipalities have the broad authority to enact ordinances to regulate the public health, safety, and welfare of the municipality and its citizens.[7] More particularly, *N.J.S.A.* 40:48-1(20) permits municipalities to make and enforce ordinances that regulate:

the use of theaters, cinema houses, public halls, schools, churches, and other places where numbers of people assemble, and the exits therefrom, so that escape therefrom may be easily and safely made in case of fire or panic; and to regulate any machinery, scenery, lights, wires and other apparatus, equipment or appliances used in all places of public amusement.

However, this broad authority is not absolute and may be limited when the municipality is prevented from enacting ordinances which are contrary to state law or policy due to the doctrine of preemption. *Overlook Terrace Management v. Rent Control Bd. of W. New York*, 71 *N.J.* 451, 461, 366 *A.2d* 321 (1976).

■ The validity of any municipal ordinance under the doctrine of preemption must necessarily turn upon the intention of the Legislature. Thus, if a court "determines that the Legislature intended its own actions, whether it exhausts the field or touches only part of it, to be exclusive, then it will conclude that the State has preempted the field, thereby barring any municipal legisla-

---

amended, is a valid exercise of the City of Paterson's police power and is not preempted by State law); *FDR Vending Inc. v. City of Paterson*, Civil Action No. 92–1414 (D.C.N.J. May 21, 1992) (Paterson ordinance is not preempted by State law and is constitutionally valid).

[7] *N.J.S.A.* 40:48–2 provides that:

Any municipality may make, amend, repeal and enforce such other ordinances, regulations, rules and by-laws not contrary to the laws of this state or of the United States, as it may deem necessary and proper for the good government, order and protection of persons and property, and for the preservation of the public health, safety and welfare of the municipality and its inhabitants, and as may be necessary to carry into effect the powers and duties conferred and imposed by this subtitle, or by any law.

tion." *Mack Paramus Co. v. Mayor and Council of Paramus*, 103 *N.J.* 564, 573, 511 *A.*2d 1179 (1986).

This caveat is limited by the fact that municipalities have been granted broad authority and control over matters of local concern and interest by Art. IV, § 7, para. 11 of the New Jersey Constitution. This particular section of the Constitution "ordains liberal construction of these powers." *Township of Chester v. Panicucci*, 62 *N.J.* 94, 99, 299 *A.*2d 385 (1973). Thus, the legislative intent to supersede these local powers by legislative enactments must be *clearly* present in the Legislature's actions. *Garden State Farms, Inc. v. Mayor Louis Bay, II*, 77 *N.J.* 439, 450, 390 *A.*2d 1177 (1978).

The seminal case pertaining to the doctrine of preemption is *Overlook Terrace Management Corp., supra.*[8] The Court outlined five factors to consider in a preemption analysis:

1. Does the ordinance conflict with the state law, either because of conflicting policies or operational effect, that is, does the ordinance forbid what the Legislature has permitted?
2. Was the state law intended expressly or impliedly to be exclusive in the field?
3. Does the subject matter reflect a need for uniformity?
4. Is the state scheme so pervasive or comprehensive that it precludes coexistence of municipal regulation?
5. Does the ordinance stand as an obstacle to the accomplishment and execution of the full purposes and objectives of the Legislature?

*Id.* 71 *N.J.* at 461–2, 366 *A.*2d 321 (citations omitted).

However, any preemption analysis concerning the Code of Criminal Justice must be cognizant of its specific statutory terms, specifically *N.J.S.A.* 2C:1–5(d). This statute mandates that:

---

[8] Many courts have utilized and adopted the reasoning of the *Overlook* Court in their preemption analysis. *See e.g. Mack Paramus Co. v. Mayor and Council of Paramus*, 103 *N.J.* 564, 511 A.2d 1179 (1986); *Clean Capital Co. Comm. v. Driver*, 228 *N.J.Super.* 506, 550 A.2d 494 (App.Div.1988); *Harrison Assoc. v. Rent Leveling Bd.*, 215 *N.J.Super.* 1, 520 A.2d 1150 (App.Div.1986); *Horner v. Ocean Tp. Comm.*, 175 *N.J.Super.* 533, 420 A.2d 1033 (App.Div.1980); *Teamsters Local 331 v. Atlantic City*, 191 *N.J.Super.* 404, 467 A.2d 264 (Ch.Div.1981); *Danmark, Inc. v. So. Brunswick Tp. Rent Level Bd.*, 184 *N.J.Super.* 478, 446 A.2d 565 (Law Div.1982).

Notwithstanding any other provision of law, the local governmental units of this State may neither enact nor enforce any ordinance or other local law or regulation conflicting with, or preempted by, any provision of this code or with any policy of this State expressed by this code, whether that policy be expressed by inclusion of a provision in the code or by exclusion of that subject from the code.

In the instant case, counsel for the defendant rely on this statutory provision and more particularly, *State v. Crawley,* 90 *N.J.* 241, 447 *A.*2d 565 (1982), for the proposition that preemption by exclusion, i.e. the Legislature has determined that a particular activity will not be criminalized and hence, will prevent municipalities from criminalizing that activity, prohibits Paterson from regulating mechanical amusement devices used solely for gambling purposes. They argue that since the Legislature has only delineated "slot machines" and other "gambling devices" as prohibited machines, it has excluded from prohibition and/or regulation the types of machines the City of Paterson has regulated.[9] However, this court believes that their reliance is misguided.

In *State v. Crawley, supra* the Supreme Court invalidated a local ordinance pertaining to loitering. It based its decision upon the doctrine of preemption by exclusion. *Id.* at 251, 447 *A.*2d 565. The Court noted that the legislative history of the Code of Criminal Justice evinced a decision not to proscribe loitering, whereas pre-Code penal law criminalized the act of loitering. *Id.* at 245, 447 *A.*2d 565. Thus, it concluded that "the Legislature made a conscious decision to exclude a general loitering provision from the Code." *Id.* at 246, 447 *A.*2d 565. Therefore, the Court determined that the municipality was preempted from criminalizing that which the Legislature ascertained should not be prohibited. *Id.*

In the instant case, the legislative treatment of the subject matter is quite different. The Legislature did not intend to treat the subject of "gambling devices" comprehensively or exhaustively. Rather, it only chose to prohibit the possession of "slot machines" or any other "gambling device" believed to advance

---

[9] *See supra* note 4 and accompanying text.

illegal gambling.[10]  Thus, unlike the standard used in *Crawley,* the Criminal Code's preemption by exclusion doctrine is not applicable in determining the validity of Paterson's ordinance.  Rather, the analysis must focus on a consideration of the factors relevant to an application of the doctrine of preemption by inclusion.  This necessarily requires this court to determine whether the ordinance conflicts with any Code provisions or policies expressed thereunder.

In utilizing the *Overlook* test, this court must first consider whether the Paterson ordinance conflicts with state law.  "That is, does the ordinance forbid what the Legislature has permitted or does the ordinance permit what the Legislature has forbidden?"  *Overlook,* 71 *N.J.* at 461, 366 *A.*2d 321.  Here, the Paterson ordinance clearly does not permit any activities that the state law prohibits.  Moreover, while the state statute prohibits the possession of a "slot machine" and any other "gambling device used in the advancement of gambling activity," the Paterson ordinance merely prevents the licensure of slot machines and a myriad of other mechanical amusement devices it has determined advance or encourage gambling activity.  Therefore, it cannot be said that the Paterson ordinance, which is somewhat broader in scope than the state statute, prohibits that which the state law permits.  Thus, this court finds that there is no apparent conflict between the state statute and the Paterson ordinance.

◼︎   Whether the state law was intended to be exclusive in the field, as well as the need for uniformity in the subject matter, are relevant considerations in a preemption dilemma.  Thus, when the:

> state regulatory scheme provides wide coverage and is broadly inclusive of the subject matter, local controls may be discordant and disruptive, with no appropriate place in the legislative plan.  On the other hand, if state law is only narrowly

---

10 *See supra* note 4 and accompanying text.

focused upon particular matters encompassed within a much broader spectrum of activity, local regulation may be entirely proper.

*Mack Paramus Co., supra,* 103 *N.J.* at 576, 511 *A.*2d 1179.

This court finds that the state scheme criminalizing the possession of gambling devices is not so comprehensive or exhaustive in order to preclude local regulation. The state statute, *N.J.S.A.* 2C:37–7, narrowly concentrates on the prohibition against the possession of gambling devices. However, there is no indication that the Legislature sought to foreclose municipalities from exercising their regulatory authority over the licensure of amusement devices which are utilized for gambling purposes. By reviewing the state statutory scheme, this court is satisfied that there is nothing in the Legislature's actions that bespeak exclusivity.

The case of *Mannie's Cigarette v. West New York,* 259 *N.J.Super.* 343, 613 *A.*2d 494 (App.Div.1992) is instructive in this regard. There, the Court determined that a municipal ordinance which regulated the amount and placement of mechanical amusement devices was not preempted by State law, specifically *N.J.S.A.* 2C:37–7. *Id.* at 350, 613 *A.*2d 494. It found that the ordinance was not preempted, even though its sole purpose was to prevent the use of amusement devices in gambling activity. *Id.* at 346, 613 *A.*2d 494. The Court based its decision on the fact that "subject matter convergence is not, by itself, determinative of the preemption question. In evaluating a state preemption argument in the absence of an expressed preclusion of municipal authority, a court must carefully examine in detail the actual ways in which state and municipal ordinances conflict." *Id.* at 348, 613 *A.*2d 494. Thus, it held that there was no apparent conflict between the ordinance and statute, but rather, they were mutually coexistent. *Id.* at 350, 613 *A.*2d 494.

Moreover, this court must determine whether the subject matter requires a need for uniformity. "A subject in need of statewide uniformity is one in which the needs, with respect to those matters, do not vary locally in their nature or intensity. Municipal action would not be useful, and indeed, diverse local decisions

would be mischievous and even intolerable." *Summer v. Township of Teaneck,* 53 *N.J.* 548, 553, 251 *A.*2d 761 (1969). However, "practical considerations may warrant different or more detailed local treatment to meet varying conditions or to achieve the ultimate goal more effectively." *Inganamort v. Borough of Fort Lee,* 62 *N.J.* 521, 528, 303 *A.*2d 298 (1973). This court finds that the ultimate goal of both the state law and the Paterson ordinance is the prevention of illegal gambling activity through the use of gambling devices or mechanical amusement devices. Furthermore, the record before this court indicates that the City of Paterson has determined that certain mechanical amusement devices have the strong propensity to be utilized for illegal gambling activity. "It cannot be disputed that protection from such harmful results represents a most substantial local interest in those municipalities where the evil is prevalent." *Township of Chester v. Panicucci, supra,* 62 *N.J.* at 100, 299 *A.*2d 385. Thus, the city has concluded that the regulation of these machines will attempt to prevent their widespread use for gambling activities. The city has deemed that its refusal to grant a license for a mechanical amusement device, presumed to be used solely for gambling purposes, is the most appropriate method to combat the spread of illegal gambling within its borders. This court will not substitute its judgment and reasoning for that of the Mayor and City Council in determining the best method to combat this evil. Therefore, this court concludes that the regulation of mechanical amusement devices in order to prevent their use for illegal gambling activities is not a subject matter that requires strict uniformity, inflexible to the local concerns of a municipality.

The next standard for this court to consider is whether the state scheme is so pervasive or comprehensive that it precludes coexistence of municipal regulation. This court concludes that *N.J.S.A.* 2C:37–7 is not such a comprehensive statutory scheme so as to prevent the coexistence of Paterson's municipal regulations. The statutory scheme does not seek to prevent any other regulation in this area. This conclusion is supported by the determination that municipalities may, "dependent on local conditions and pertinent

circumstances, enact more stringent regulations in the field so long as such regulation is not unreasonable." *Township of Chester v. Panicucci, supra,* 62 *N.J.* at 102, 299 *A.*2d 385. *See also Gold v. City Council of City of Trenton,* 121 *N.J.Super.* 137, 296 *A.*2d 327 (App.Div.1972) (the court may invalidate an ordinance only if the presumption in favor of the validity of it is overcome by an affirmative showing that it is unreasonable or arbitrary). Thus, this court concludes that the Paterson ordinance is a reasonable exercise of the city's municipal authority.

In a similar vein, the court in *C.I.C. Corp. v. East Brunswick Tp.,* 266 *N.J.Super.* 1, 12, 628 *A.*2d 753 (App.Div.1993) determined that a municipal ordinance which prohibited the use of cigarette vending machines in the township was not preempted by state law which regulated the sale and distribution of cigarettes. It found that although the state had created a broad licensing scheme to regulate the sellers and distributors of cigarettes, nothing in the state law prevented a municipality from expanding on it to protect the health and welfare of its citizens. *Id.* at 10, 628 *A.*2d 753. This reasoning is applicable to the instant case. Although the Legislature has enacted a broad scheme delineating the various gambling offenses under the Code, nothing therein prevents municipalities from enacting more reasonably stringent regulations to protect its citizens and to conform to local and specific regulatory needs.

The case of *Rosenkranz v. Vassallo, Jr., Dir. of State Div.,* 193 *N.J.Super.* 319, 473 *A.*2d 991 (App.Div.1984) provides this court with an interesting perspective on the validity of the Paterson ordinance. There, the court upheld the decision of the Director of the Division of Alcoholic Beverage Control to prohibit the placement of mechanical amusement devices which may be utilized for illegal gambling in licensed taverns and bars. *Id.* at 326, 473 *A.*2d 991. The Director's decision was based on the fact that many of the machines had no other purpose except to encourage gambling between patrons and/or the licensee. *Id.* at 323, 473 *A.*2d 991. (It should be noted that many of the amusement devices prohibited in

the Director's decision are unlicensable under the Paterson ordinance). In reviewing the Director's decision, the court held that "these machines have marginal amusement value, encourage gambling between the player and observers, and are susceptible to serving as the basis for an award of money or other valuable things by the licensee to a player on the basis of the player's score or points won." *Id.* at 326, 473 *A.*2d 991. Although this case did not deal with the issue of preemption, it is interesting to note that the *Rosenkranz* Court determined that many of the devices deemed unlicensable by the Paterson ordinance have the sole purpose of encouraging gambling.

The last standard that this court must consider in its analysis is whether the ordinance prevents the accomplishment and execution of the purposes and objectives of the legislative enactment. This court concludes that the Paterson ordinance in no way presents an obstacle to the full realization of the legislative goals espoused in *N.J.S.A.* 2C:37–7. Rather, this court finds that the ordinance actually complements the state statute in some respects. Therefore, the failure of Paterson to license mechanical amusement devices used solely for gambling purposes "can only facilitate rather than conflict with the State's effort to prohibit their use for gambling." *Mannie's Cigarette, supra,* 259 *N.J.Super.* at 349, 613 *A.*2d 494.

Therefore, for the aforementioned reasons, this court concludes that *RGOP* § 4–1 is not preempted by *N.J.S.A.* 2C:37–7. The Paterson ordinance is a valid exercise of the municipality's inherent authority to regulate the public health, welfare, and safety of its citizens. Accordingly, the defendant's conviction for a violation of *RGOP* § 4–2 is affirmed. This Court imposes the same sentence on the defendant as that rendered by the court below.

The court directs the counsel for the City of Paterson to submit an order accordingly.